**Daniel Robert GARMONG, et al., Plaintiff,**

**v.**

**MONTGOMERY COUNTY, Defendant.**

**Joe Corley, Sheriff of Montgomery County, Defendant.**

**No. CA H–84–69.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 26, 1987.

Harry H. Walsh III, Huntsville, Tex., Phillip W. Swisher, Conroe, Tex., for plaintiff.

Jim Dozier, Conroe, Tex., for defendant, Montgomery County.

Richard Powell, Briscoe & Powell, Houston, Tex., for defendant Joe Corley.

Gerald M. Birnberg, Houston, Tex., for plaintiff on Fee Litigation.

## ORDER

CARL O. BUE, Jr., District Judge.

Pending before the Court is Plaintiff Daniel Robert Garmong's application for attorney fees pursuant to 42 U.S.C. § 1988. The Court has considered the record as a whole in light of the requirements of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) and the impact of the Supreme Court's recent decisions in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) and *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). As a consequence, the Court hereby awards to the Plaintiff, Daniel Robert Garmong, attorney fees and costs in the total amount of $174,020.83.

## BACKGROUND

This lawsuit was filed in January 1984, by Plaintiff, Daniel Robert Garmong, pursuant to 42 U.S.C. § 1983, seeking to recover damages sustained as a result of defendants' alleged policy of using unlawful force against inmates incarcerated in the Montgomery County jail. The suit was originally filed by Attorney J. Patrick Wiseman. However, in 1984, Mr. Wiseman accepted employment with the Texas Attorney General, and his firm could no longer represent Mr. Garmong. Harry H. Walsh III, a Huntsville attorney, and Phillip Swisher, a

Conroe attorney, applicants herein, agreed to represent the plaintiff on a purely contingent basis.

The case was tried to a jury during a six day trial which resulted in the return of a verdict on April 15, 1987, in favor of the plaintiff against Defendant Montgomery County, Texas, and Joe Corley as Sheriff of Montgomery County, in the amount of $40,-000.

The evidence presented to the jury demonstrated that on or about January 10, 1983, the plaintiff was taken into custody by a Montgomery County Deputy Sheriff after an automobile accident in which plaintiff was involved as a passenger. Testimony was presented that at the time plaintiff was placed in his cell, the officer incited the other inmates to assault the plaintiff by telling an inmate to "take care of" the plaintiff because he had "shot two little kids on a three-wheeler." Plaintiff was severely beaten while in the cell and sustained bodily injuries.

■ After lengthy deliberations, the jury found by its verdict that the beating occurred pursuant to an official policy, custom or procedure of Montgomery County and Joe Corley as Sheriff of Montgomery County to sanction, permit or allow the use of force to punish prisoners and that the plaintiff was entitled to recover compensatory damages in the sum of $40,000 against Montgomery County as a consequence of such official policy. Plaintiff is therefore a prevailing party under 42 U.S.C. § 1983 and is entitled to recover attorney fees pursuant to 42 U.S.C. § 1988.[1]

## METHODOLOGY USED IN CALCULATION OF ATTORNEY FEES

■ *Johnson v. Georgia Highway Express, Inc., supra* at 717–19 lists twelve factors that a district court in the Fifth Circuit must consider in awarding statutorily authorized attorney fees. Those factors are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal services properly;

(4) the preclusion of other employment by the attorney;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitation imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and the ability of the attorney;

(10) the undesirability of the case;

(11) the length and nature of the attorney-client relationship; and

(12) awards in similar cases.

Applying the Johnson factors, a court is required to explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors affects the decision. *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575 (5th Cir.1980) (Copper Liquor II); *Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1299–1300 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

In *Copper Liquor II, supra,* the Fifth Circuit suggested that four of the Johnson factors be given special attention:

(1) the time and labor required;

(5) the customary fee;

(8) the amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorney;

*Id.* 624 F.2d at 583.

In the Fifth Circuit, the determination of a reasonable attorney fee involves considering the twelve Johnson factors in light of the following framework:

1.) *Ascertain the nature and extent of the services supplied by the attor-*

---

1. 42 U.S.C. § 1988 provides in pertinent part that in specified actions under Title 42, the Court may in its discretion allow the prevailing party, other than the United States, a reasonable attorneys fee as part of the costs.

*ney.* This involves an examination of trial records submitted by the attorney to determine which hours should be compensated. Hours may be disallowed for duplication, vagueness, excessiveness, or for other good reasons.

2.) *Value the services according to the customary fee and quality of the legal work.* This involves selection of an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases.

*Sims v. Jefferson Downs Racing Ass'n.,* 778 F.2d 1068 (5th Cir.1985).

The product of the number of compensable hours times the selected hourly rate forms a number known as the "lodestar." *Sims, supra* at 1084. In *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984), (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)), the Supreme Court concluded that "the 'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee within the meaning of [§ 1988]."

■ However, calculation of a lodestar does not end the inquiry. Other considerations may lead a court to adjust the award upward or downward. These considerations constitute the third step:

3.) *Adjust the lodestar on the basis of the Johnson Factors that may be of significance in the particular case.* *Sims v. Jefferson Downs, supra* at 1084. At this point, however, because many of the Johnson factors are already considered within the calculation of the hours expended at a reasonable hourly rate, the Fifth Circuit has held that "a Court need not in determining the [adjustment] consider some factor already included in the calculation of the lodestar." *Graves v. Barnes,* 700 F.2d 220, 224 (5th Cir.1983).

With this framework and applicable Supreme Court precedent providing guidance, the Court will address each of the Johnson factors to properly formulate an award of attorneys' fees and costs for the two primary applicants and special fee counsel.

## FACTOR I.

### THE TIME AND LABOR REQUIRED

Calculation of a beginning lodestar account requires a determination of the time and labor necessary to represent plaintiff throughout all stages of this proceeding. At the onset, plaintiff's counsel Walsh has submitted a claim (Plaintiff's Exhibit 1) for 334.31 hours worked on the case through July 6, 1987. Plaintiff's counsel Swisher has submitted a claim (Plaintiff's Exhibit 2) for 332.75 hours expended on the case through April 15, 1987.

Mr. Walsh's claim is based primarily on traditional "contemporaneous time records." Mr. Walsh testified that in October of 1986, he obtained a computer and maintained all contemporaneous time records by direct entry into the computer and the use of a computer time slips program. Prior to November 1, 1986, Mr. Walsh maintained traditional handwritten time slips. When he acquired the computer, he transferred the handwritten slips to the computer. Plaintiff's Exhibit 1 represents a compilation of the time records of Mr. Walsh.

Mr. Swisher's time records were not as concise and detailed as Mr. Walsh's. Mr. Swisher kept track of time expended by using a calendar for notations, as well as expense sheets, telephone records and notes. At the time Mr. Swisher was retained, he had barely practiced law for a year and had never appeared in Federal Court for a civil lawsuit. His practice was exclusively criminal, and he worked as a sole practitioner. He has never charged a client an hourly rate; rather, he follows the common practice of criminal practitioners who bill on a lump sum basis. After reviewing Mr. Swisher's background, the Court finds that his failure to maintain traditional time slips is not unusual.

■ However, the fee application submitted by Mr. Swisher is amply supported by evidence of time records maintained in a contemporaneous manner. A review of Mr. Walsh's records reveals numerous in-

stances in which Mr. Swisher necessarily worked with Mr. Walsh on the same matter. Similarly, Mr. Walsh's conferences and telephone calls with Mr. Swisher are accurately and concisely recorded, clearly supporting Mr. Swisher's entitlement to compensation for that time spent. Additionally, the invoices of an investigator, Richard Reyna (Plaintiff's Exhibit 3) support the Swisher claim by indicating the dates on which conferences took place between Reyna and Swisher. These records, while admittedly not traditional time slips, do represent contemporaneous time records on which the Court may base an award of attorney fees. Mr. Swisher is entitled to recover attorney fees on the basis of his time records which have been reconstructed in his invoice to the plaintiff. (Plaintiff's Exhibit 2). *See e.g. Johnson v. University College of the University of Alabama,* 706 F.2d 1205 (11th Cir.) *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983); *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983); *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465 (9th Cir.1983); *Cruz v. Beto,* 453 F.Supp. 905 (S.D.Tex.1977) aff'd., 603 F.2d 1178 (5th Cir.1979); *Harkless v. Sweeny Indep. School District,* 608 F.2d 594 (5th Cir.1979).

■ The defendants argue that the plaintiff's fee application is duplicative. A review of time records and invoices in light of the demands required by a case with factual and legal complexities such as this one leads the Court to conclude that no unnecessary duplication has occurred. One area that merits careful evaluation is the forty-five to fifty hours claimed by plaintiff's co-counsel for conferences with each other and third parties. Considering that the burden was on the plaintiff to prove the existence of an ongoing county policy of violence against inmates in Montgomery County, forty-five to fifty hours of conferences between counsel is hardly unreasonable, especially considering the difficulty inherent in procuring testimony of current or former county employees adverse to Montgomery County and Sheriff Corley.

Another area where duplication appears to be a consideration concerns the deposition of a witness, Joseph Garino, who was incarcerated in the Texas Department of Corrections. Pursuant to court order, plaintiff's counsel was ordered to depose Garino at the Ellis II Unit in Walker County, Texas. Mr. Swisher had interviewed Garino and knew the factual basis for his testimony. However, Mr. Swisher had never conducted a deposition before. Mr. Walsh was very experienced in deposing witnesses, but had not previously interviewed Mr. Garino. Accordingly, Mr. Walsh required Mr. Swisher's input and participation at the deposition. The time billed therefore is not duplicative.

The Court also observes that counsel's fee applications include time labelled as "travel time" for Mr. Walsh and Mr. Swisher's trips between Houston and Huntsville during the trial. This time is more appropriately labelled "conferences with co-counsel" or "trial preparation" because it is apparent that both counsel used this time to prepare trial strategy and to organize oral arguments. The Court finds that this time is properly recoverable at the adjusted lodestar rate.

■ In sum, the Court finds that the plaintiff has sustained and discharged the burden of proving by sufficient, credible and compelling evidence the amount of time expended by each of his lawyers in this litigation and the nature and extent of services rendered and performed by each of them. The time claimed by counsel constitutes the minimum amount of time necessary to present and prevail on a case such as this one. The Court notes through a comparison of defendant's counsel's time sheets that plaintiff's counsel understated the total amount of time expended on the case in many instances. Plaintiff's Exhibits 1 and 2 therefore constitute conservative, accurate and reliable compilations of the number of hours expended on this case.

The Court finds that Mr. Walsh's claim for 334.31 hours expended is a necessary and reasonable amount of time and labor required for the successful result achieved in this case. The Court finds that Mr.

Swisher's claim for 332.75 hours is also a necessary and reasonable amount of time and labor expended. Accordingly, the Court will calculate the appropriate hourly rate based on these hours.

## FACTOR II.

### THE NOVELTY AND DIFFICULTY OF THE QUESTIONS

■ The Garmong case is commonly referred to as a "Police Brutality" case. Although "Police Brutality" cases are not novel, the instant case presented serious factual difficulties relating to proof. The plaintiff was a jail inmate and could be viewed by jurors as inherently unworthy of belief. One of the defendants is a well-known county sheriff who epitomizes law enforcement in Montgomery County. The plaintiff had to show that not only was he a victim of brutality, but that the brutality was the result of Montgomery County's official policy which was endorsed and sanctioned by Sheriff Corley. In this regard, it was extremely difficult for the plaintiff to produce credible witnesses willing to testify against the law enforcement authorities in Montgomery County.

The Court and counsel are well aware that the law concerning county liability for civil rights violations and the appropriate legal standards for § 1983 liability are evolving continuously. In fact, the Supreme Court's decision in several cases, including *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) which held jail officials' negligence inactionable under § 1983, clearly presented legal pitfalls for the plaintiff in this case.

The Court concludes, however, that the present case, while difficult, does not rise above the norm of § 1983 cases in general. Although it presented significant factual and legal problems, these types of problems are innately a part of complex civil rights litigation.

## FACTOR III.

### THE SKILL REQUISITE TO PERFORM THE LEGAL SERVICES PROPERLY

■ In evaluating this factor, the Court must consider an attorney's work product, his preparation, and general ability before the Court. *Cruz v. Beto, supra.* The Court is also required to evaluate counsel's skill based on past experience as a lawyer and "observations from the bench of lawyers at work." *Johnson, supra,* 488 F.2d at 718.

The Court has carefully considered the professional performance of plaintiff's counsel at trial, throughout pretrial conferences and in all written submissions to the Court.

■ The Court finds that counsel were amply skilled to successfully persuade a Harris County jury that an elected law enforcement official of Montgomery County and the County itself officially sanctioned the use of physical force on prisoners in the county jail. Plaintiff's counsel were also well versed in civil rights law and consistently presented a solid legal framework to assist the Court throughout the litigation. The fact that plaintiff's counsel was able to convince the jury to return a $40,000 verdict in favor of a former prisoner where there was no evidence of permanent physical disability demonstrates the high degree of skill exhibited in this case by plaintiff's counsel.

## FACTOR IV.

### THE PRECLUSION OF OTHER EMPLOYMENT BY THE ATTORNEYS DUE TO ACCEPTANCE OF THE CASE

Neither of plaintiff's counsel has alleged that his involvement in the *Garmong* case foreclosed him from accepting other employment for any reason. Accordingly, this factor plays no part in the Court's determination of the appropriate fee to be awarded.

## FACTOR V.

### THE CUSTOMARY FEE

■ In calculating the "customary fee" to be awarded, the Court has used the rates that currently prevail in the local

market as opposed to rates that have historically been in effect throughout these proceedings. This method has been endorsed both by the Supreme Court and the Fifth Circuit and is the applicable standard to be applied in this district. *See, Pennsylvania v. Delaware Valley Citizen's Council for Clean Air, supra; Lawler v. Teofan,* 807 F.2d 1207 (5th Cir.1987); *Van Ooteghem v. Gray,* 774 F.2d 1332 (5th Cir. 1985); *Graves v. Barnes,* 700 F.2d 220 (5th Cir.1983); *Leroy v. City of Houston,* 648 F.Supp. 537 (S.D.Tex.1986); *Ruiz v. Estelle,* 553 F.Supp. 567 (S.D.Tex.1982); *Johnston v. Harris County Flood Control District,* No. H–82–2729, slip op. (S.D.Tex. June 20, 1987).

◼ Defendants contend that the relevant community or market in which legal fees should be examined is "Huntsville and Conroe, Texas where the attorneys reside" rather than Houston, the forum for this litigation. This position, however, is clearly at odds with the universally accepted rule that the rate to be applied in attorney fees litigation is that of the forum district. *See, In Re Agent Orange Product Liability Litigation,* 818 F.2d 216 (2d Cir.1987); *Avalon Cinema Corp. v. Thompson,* 689 F.2d 137 (8th Cir.1982) (en banc); *Donnell v. United States,* 682 F.2d 240 (D.C.Cir. 1982); *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983); *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982); *cert. denied,* 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). Accordingly, any testimony regarding the customary hourly fee charged in Huntsville is irrelevant to a determination of applicants' fees.[2]

The Court has therefore considered the customary and prevailing rates in the Houston, Harris County area for routine legal services in the federal courts charged by practitioners possessing the caliber of skill and experience of both Mr. Swisher and Mr. Walsh.

The evidence adduced at the hearing demonstrated that the customary fee for routine legal services on an hourly basis for a practitioner regularly practicing in federal courts and possessing eighteen years of experience similar to Mr. Walsh is between $200 and $250.00 per hour. This rate represents the fee at which competent counsel of similar experience to that of Mr. Walsh are ordinarily and regularly willing to accept meritorious routine federal cases from fee paying clients in the local community. Although the defendants attempted to rebut this evidence by introducing testimony that the customary rate in Harris County is between $100 and $150 per hour, this testimony failed to take into account the experience of Mr. Walsh, particularly in this type of litigation.

The plaintiff produced evidence that the customary fee on an hourly basis for routine legal services rendered in Houston federal courts for a practitioner with four years of legal experience similar to Mr. Swisher is between $145.00 and $175.00 per hour. This hourly rate is the compensation which competent counsel with similar experience to Mr. Swisher are routinely requiring in order to accept meritorious routine federal cases from fee-paying clients in the local community. These rates, however, are for cases in which counsel is ordinarily guaranteed that he will receive prompt, current payment of fees in addition to all out-of-pocket costs and expenses, regardless of the outcome, unpopularity or undesirability of the case. As a general rule, practitioners in Houston demand a high premium on contingent fee cases, that is, those cases in which recovery of attorney fees is contingent on the success of the merits of the case. Absent such a contingency feature, the $145.00 to $175.00 range customarily prevails.

◼ Defendants argue that the fee claimed by plaintiff's counsel should necessarily be reduced substantially because the total of counsel's invoices to Mr. Garmong

---

**2.** The Court observes, however, that a consideration of rates customarily charged in another jurisdiction could well be relevant in a situation where the 'special expertise' of nonlocal counsel who ordinarily commands a higher rate than that charged in the forum was essential to the case, or that other special circumstances existed. *In Re Agent Orange Product Liability Litigation,* 818 F.2d 216, 222 (2d Cir.1987).

amounts to more than three times the jury verdict of $40,000. However, the Supreme Court's plurality opinion in *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) explicitly rejected the view that the legislative history of 42 U.S.C. § 1988 indicates that Congress intended an award of attorney fees to be proportional to the amount of damages recovered by a plaintiff. The Supreme Court expressly refused to adopt a rule that attorney fees under § 1988 be proportionate to damages recovered and concluded, instead, that successful attorneys in civil rights cases should be compensated "for all time reasonably expended on a case:" 477 U.S. ——, 106 S.Ct. at 2696. *See also Cobb v. Miller,* 818 F.2d 1227 (5th Cir.1987); *Brantley v. Surles,* 804 F.2d 321 (5th Cir. 1986) (upholding an attorney's fee award nearly twice as large as the damages recovered.) In light of these authorities, the Court has no choice but to reject defendant's argument.

The Court concludes that the customary hourly rates prevailing in Houston's legal market on July 7, 1987 for federal litigation services performed by counsel with Harry H. Walsh III's reputation, experience and ability is $200 per hour. This rate does not take into account the appropriate enhancement for the contingent nature of the case, the case undesirability and the exceptional results achieved.

The customary prevailing hourly rate in the Houston legal community for counsel with Mr. Swisher's experience, skill and reputation on July 7, 1987 for federal litigation services is $150 per hour. This rate is unadjusted and does not reflect those areas previously mentioned that merit enhancement.

## FACTOR VI.

### WHETHER THE FEE IS FIXED OR CONTINGENT

The evidence presented at the attorney fees hearing demonstrated that plaintiff's counsel undertook representation of Mr. Garmong on a purely contingent fee basis. The fee arrangement was entirely contingent upon success on the merits: if plaintiff did not prevail, plaintiff's counsel would be paid nothing for their efforts expended in representing the plaintiff. Due in part to Mr. Garmong's unemployment at the time of trial, plaintiff's counsel bore in full the cost of subpoenas, depositions, employment of a private investigator and all other costs of litigation. Counsel assumed payment of these expenses solely on a purely contingent basis as well, with no guarantee whatsoever that payment would be forthcoming.

■ A review of all facts and circumstances in this case and careful consideration of recent case law governing enhancement for contingency of nonrecovery of attorney fees leads the Court to conclude that the lodestar should be increased to reflect the risk of nonpayment in this case. As previously noted, the evidence demonstrated that the local Houston marketplace definitely treats contingent fee cases as a class differently from the manner in which it treats noncontingent fee cases. Due to the risk of nonpayment, the local market commands a premium in order to make contingent fee work as attractive and competitive as noncontingent fee work. Plaintiff's witnesses, Herbert T. Schwartz and William Fred Hagans, testified that the Houston market places a 60% to 100% premium on contingent fee cases in order to attract competent counsel to undertake contingency work. Considering the Houston legal marketplace in general, it is clear that without risk enhancement, the plaintiff Daniel Garmong and plaintiffs in similar circumstances would have faced substantial difficulty in finding competent counsel willing to undertake their representation. Plaintiff's unemployment and status as a former prisoner present a sufficient deterrent to an attorney who must necessarily shoulder a substantial financial burden in all costs of litigation.

In a splintered and somewhat bewildering opinion, the Supreme Court addressed the appropriateness of an enhancement for contingent fee payment in specified cases. *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air, supra.* A

conservative interpretation of the plurality's opinion authored by Justice White centers around three rules: (a) risk of losing apparent to the lawyer at the outset of his involvement in the case which (b) normally would be limited to one-third of the lodestar and (c) evidence in the record and a specific court finding that without risk enhancement, the plaintiff would have faced substantial difficulty in finding counsel in the local or other relevant market. —— U.S. at ——, 107 S.Ct. at 3088–89. Without further divining the plurality's intentions, or reconciling apparent internal inconsistencies within the plurality's opinion, *compare* —— U.S. at ——, 107 S.Ct. at 3087–88 *with* —— U.S. at ——, 107 S.Ct. at 3089–90, the Supreme Court's pronouncement leads this Court to conclude that enhancement of the lodestar may be made in this case to compensate for plaintiff's attorney's risk of nonpayment, and that the maximum adjustment for such risk of nonpayment must be limited to ⅓ of the lodestar. *See* —— U.S. at ——, 107 S.Ct. at 3089. The relevant inquiry for the Court is to ascertain the extent to which the local marketplace places a premium on contingency work generally, without regard to the particulars of a given case. (*See* Justice O'Connor's concurrence, —— U.S. at ——-——, 107 S.Ct. at 3090–92).

The Court, having made the requisite factual findings above, concludes that a 10% enhancement is the minimum premium necessary to bring fees in contingent fee cases within the range that would attract competent counsel to such cases in the local market.

## FACTOR VII.

### TIME LIMITATIONS IMPOSED BY THE CLIENT OR THE CIRCUMSTANCES

Neither counsel has requested that the lodestar be adjusted to account for the detrimental effect that the trial had on counsel's law practice. The Court has not considered this factor in the computation of an appropriate fee.

## FACTOR VIII.

### THE AMOUNT INVOLVED AND THE RESULTS OBTAINED

The result in this case is indeed significant in terms of the relevant law under *Johnson*. More important than obtaining the $40,000 jury verdict, plaintiff's counsel accomplished the difficult task of procuring a jury finding that the plaintiff's injuries resulted from a widespread use of force on jail inmates as a consequence of an official policy sanctioned by Montgomery County and Sheriff Joe Corley. Without reiterating the extensive evidence supporting the verdict, the Court finds that the result achieved was exceptional and mandates an appropriate upward adjustment of the lodestar amount by ten (10%) percent.

## FACTOR IX.

### THE EXPERIENCE, REPUTATION, AND THE ABILITY OF THE ATTORNEYS

The experience, skill and reputation of an attorney play an important role in determining the lodestar figure. Mr. Walsh demonstrated his skill and competence amply throughout the trial. His affidavit, testimony and the testimony of both plaintiff's and defendant's witnesses at the evidentiary hearing on fees demonstrated convincingly that Mr. Walsh has an excellent reputation in federal civil rights practice.

Mr. Walsh's eighteen year law career commenced with his appointment as first inmate staff counsel for the Texas Department of Corrections. He later joined the Texas Attorney General's office where he participated as one of three lead defense counsel in the landmark civil rights case involving prison reform, *Ruiz v. Estelle*. Mr. Walsh has since entered private practice and has concentrated on litigation in federal courts with an emphasis on civil rights cases.

Although Mr. Walsh is highly skilled in federal practice, it was necessary for him to associate with co-counsel who had first-hand knowledge of the people and political practices in Montgomery County. For this

reason, Mr. Swisher's retention was indispensable. Mr. Swisher is an attorney with four years of experience who resides and practices law in Conroe, Montgomery County, Texas. Although Mr. Swisher was admittedly inexperienced as a federal trial lawyer while preparing this case, his previous work experience as a United States Customs Agent and as an investigator with the Houston Police Department and the Montgomery County District Attorney's office greatly increased his ability to participate effectively in the Garmong case. In addition, his experiences within Montgomery County rendered him invaluable to Mr. Walsh and to the plaintiff throughout the trial. The Court has carefully considered the experience, reputation and ability of counsel in formulating an appropriate fee award.

## FACTOR X.

## THE "UNDESIRABILITY" OF THE CASE

From the perspective of plaintiff's counsel, the Garmong case was extremely undesirable. Counsel were challenging the authorities of Montgomery County by accusing the County and a popular elected public official of sanctioning a policy of systemic use of unlawful force against prisoners in the Montgomery County jail. As a result, plaintiff's counsel were publicly harassed in the media. As plaintiff's Exhibit No. 8 (newspaper articles, letters and editorials) demonstrates, community sentiment in Montgomery County was strongly against plaintiff's counsel's efforts in this case.

Accordingly, the Court concludes that an upward enhancement of $5.00 per hour for each hour worked is appropriate to compensate plaintiff's counsel for the highly undesirable nature of the Garmong case.

## FACTOR XI.

## THE NATURE AND LENGTH OF THE PROFESSIONAL RELATIONSHIP WITH THE CLIENT

Neither of plaintiff's counsel had an ongoing professional relationship with Mr. Garmong prior to the present litigation. Therefore, it is unnecessary for the Court to adjust the fee award rate to reflect this factor.

## FACTOR XII.

## AWARDS IN SIMILAR CASES

In determining the appropriate rate to be awarded, the Court has considered court ordered awards in similar litigation within this and other circuits. After reviewing those cases emphasized by counsel among others, the Court considers the following cases particularly helpful in establishing the fee to be awarded. *Leroy v. City of Houston*, 648 F.Supp. 537 (S.D.Tex.1986) (awarding lead counsel $200 per hour in a voting rights case); *Alberti v. Sheriff of Harris County*, No. 72–H–1094 (S.D.Tex. 1987) (awarding variable rates to counsel in jail reform case for fifteen years of work); *Williams v. Heard*, 568 F.Supp. 89 (S.D. Tex.) aff'd. 703 F.2d 555 (5th Cir.1983), (awarding counsel with four years experience at time of trial $100 per hour for out-of-court time and $150 per hour for in-court time); *Ruiz v. Estelle*, 553 F.Supp. 567 (S.D.Tex.1982) (awarding experienced lead counsel in successful prison reform litigation $150 per hour).

Considering the evidence presented and the relevant case law, the Court concludes that the unadjusted rates of $200 per hour and $150 per hour respectively are inherently reasonable and fall well within the range of prevailing rates in the Houston legal community.

## RECOVERY OF OUT OF POCKET COSTS AND EXPENSES

Defendant's object to the necessity of employment and reimbursement in the sum of $8,512.20 requested by an investigator retained by plaintiff's counsel. Defense counsel argues that investigative expenses are not taxable "costs" and, therefore are not properly awardable, relying on an admiralty case, *Rederi A/B Soya v. SS Grand Grace*, 369 F.2d 159, 165 (9th Cir. 1966). Defense counsel also asserts that

these tasks could have been performed by Mr. Swisher.

However, the expenses sought herein are not deemed "costs;" instead, they are included as a component of "attorney's fees" under 42 U.S.C. § 1988. Plaintiff's theory is that the services performed by Richard Reyna were essentially the type of work "that has traditionally been done by an attorney," relying on *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 (5th Cir.1980); and, *Richardson v. Byrd*, 709 F.2d 1016 (5th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

■ Under 42 U.S.C. § 1988, non-lawyers and paraprofessionals who perform tasks traditionally performed by attorneys are entitled to compensation as "attorney fees" on an hourly basis. *Richardson v. Byrd, supra; Jones v. Armstrong Corp. Co., supra.* In fact, *Johnson, supra,* expressly recognizes that the Court should award prevailing parties investigative expenses as part of the attorney fees, although at a lower rate. 488 F.2d 714, 717. As pointed out by the plaintiff, in a proper case, investigative expenses are "a substitute for attorneys' fees" and replace an attorney's efforts. *See e.g. Bennett v. Central Telephone Company of Illinois,* 619 F.Supp. 640, 643 (N.D.Ill.1985); *Friedlander v. Nims,* 583 F.Supp. 1087, 1089 (N.D.Ga.), appeal dismissed, 747 F.2d 1467 (11th Cir.1984).

Accordingly, the Court will reimburse plaintiff's counsel for Mr. Reyna's expenses. The rate of $75 per hour is reasonable to compensate Mr. Reyna for the work traditionally done by an attorney, such as assisting counsel at trial, locating and interviewing witnesses, reviewing records and participating in conferences with lawyers and witnesses. Had Mr. Walsh or Mr. Swisher performed Mr. Reyna's function, the Court would be compelled pursuant to *Johnson* to differentiate between strict legal work and investigative work, therefore, awarding counsel a lower rate for those chores deemed investigative. The employment of Mr. Reyna therefore served an economically efficient purpose, allowing counsel more time to pursue traditional

strict legal work. The Court will allow full reimbursement of Mr. Reyna's services as a component of "attorney fees" pursuant to 42 U.S.C. § 1988.

■ Plaintiff's counsel are also entitled to recover the out-of-pocket costs and expenses in the amount of $443.52 incurred in deposing Joseph Garino. Mr. Garino's deposition was conducted pursuant to court order and was reasonable and necessary in light of the facts known to counsel when the deposition was taken. *See, Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1099 (5th Cir.1982), modified, 701 F.2d 542 (5th Cir.1983).

Expenses in the amount of $26.35 incurred for medical records and for Montgomery County Sheriff's Department records ($30.20) were similarly necessary and not incurred solely on the basis of convenience. Accordingly, the Court will allow plaintiff to recover these expenses.

### FEES FOR LITIGATING ATTORNEY'S FEES ISSUES

■ The law is well settled in the Fifth Circuit that a fee award under 42 U.S.C. § 1988 must include an amount for time reasonably expended and the expenses incurred in litigating the fee claim itself. *Cruz v. Hauck,* 762 F.2d 1230 (5th Cir. 1985); *Knighton v. Watkins,* 616 F.2d 795 (5th Cir.1980); *Johnson v. State of Mississippi,* 606 F.2d 635 (5th Cir.1979).

Additionally, where plaintiff's counsel retain an outside firm to assist in the prosecution of the fee claim, the second firm is also entitled to compensation for time reasonably expended by it on a substantially successful effort. *See, e.g., Shadis v. Beal,* 703 F.2d 71, 73 (3d Cir.1983); *McMullan v. Thornburgh,* 570 F.Supp. 1070, 1078–80 (E.D.Pa.1983); *Grendel's Den, Inc. v. Larkin,* 582 F.Supp. 1220, 1231 (D.Mass.1984) *aff'd in relevant part,* 749 F.2d 945, 958 (1st Cir.1984).

In the present case, plaintiff's counsel retained Mr. Gerald M. Birnberg and the firm of Williams, Birnberg & Andersen as special fee counsel in litigating this fee petition. *See* Plaintiff's Exhibit G. Due to

the sensitive nature of the fee claim in light of unsuccessful negotiations between plaintiff's counsel and Montgomery County, it was highly appropriate for plaintiff's counsel to retain Mr. Birnberg in this matter. The Court is well acquainted with Mr. Birnberg's skill, reputation and fifteen years of experience in federal litigation and his expertise in litigating civil rights attorney fees matters. Mr. Birnberg's skill enabled him to quickly undertake representation of plaintiff's counsel one week before the attorney fee hearing was scheduled after a breakdown in settlement negotiations.

Mr. Birnberg has submitted an affidavit and a detailed breakdown of hours incurred in the representation of Messrs. Walsh and Swisher. The Court concludes that in light of Mr. Birnberg's experience in this area, a sum of $225 per hour is fair and reasonable compensation for his efforts in this case. This sum represents a reasonable hourly rate for an attorney with the experience, ability, and reputation of Mr. Birnberg in handling such matters in the courts of Harris County. The Court finds that the sum of $160 per hour is fair and reasonable compensation for Rebecca Bryson, an associate of Mr. Birnberg with eight years of experience. The amount of time expended by Mr. Birnberg in developing and preparing the fee issues in this case, a total of 85.70 hours, is reasonable under the circumstances considering the short amount of time Mr. Birnberg had to present this matter to the Court. The 7.35 hours expended by Rebecca Bryson are equally reasonable. Accordingly, plaintiff is entitled to compensation for all time expended by his counsel in litigating the claim for attorney fees.

## CONCLUSION

After carefully considering the record as a whole and preparing a compilation of all fees and expenses as set forth in Appendix A, the Court awards the plaintiff:

1.) $144,131.76 in attorney fees for services performed by Harry H. Walsh III and Phillip W. Swisher of which $82,240.26 is to be awarded to Mr. Walsh and $61,891.50 is to be awarded to Mr. Swisher,

2.) $20,816.50 for legal services rendered by the firm of Williams, Birnberg & Anderson for the attorney fee litigation including out-of-pocket costs,

3.) $9,072.57 for out-of-pocket expenses and costs for the primary litigation,

for a total award of $174,020.83.

To the extent any findings of fact are considered to be conclusions of law, they are adopted as such. To the extent that any of the conclusions of law are considered findings of fact, they are adopted as such. This order will be incorporated in a final judgment. It is so ordered.

## APPENDIX A
### BREAKDOWN OF TOTAL FEES AWARDED TO PLAINTIFF'S COUNSEL BASED ON CURRENT MARKET RATES

| Counsel | Unadjusted "Customary Fee" | Case Undesirability | Hourly Fee Before Multipliers | Hours Expended | Lodestar Amount | Contingency Multiplier | Exceptional Results Multiplier | Total Award After Adjustment |
|---|---|---|---|---|---|---|---|---|
| Harry H. Walsh III | 200.00 | 5.00 per hour | 205.00 | 384.31 | 68,533.55 | 10% | 10% | 82,240.26 |
| Phillip W. Swisher | 150.00 | 5.00 per hour | 155.00 | 332.75 | 51,576.25 | 10% | 10% | 61,891.50 |
| | | | | | | | Total Combined Fee: | 144,131.76 |

### BREAKDOWN OF FEES AWARDED TO SPECIAL FEE COUNSEL

| | Hourly Rate | Hours Expended | | Total Award |
|---|---|---|---|---|
| Gerald Birnberg | 225.00 | 85.70 | | 19,282.50 |
| Rebecca Bryson | 160.00 | 7.35 | | 1,176.00 |
| | | | Total Fee to be Awarded Williams, Birnberg & Anderson | 20,458.50 |
| | | | Out-of-pocket Expense[1] | 358.00 |
| | | | GRAND TOTAL | 20,816.50 |

[1]These expenses include reimbursable items including computerized legal research and copying documents.

BREAKDOWN OF OUT–OF–POCKET EXPENSES AND COSTS AWARDED TO PLAINTIFF'S COUNSEL

| | |
|---|---:|
| Expedited Deposition of Joseph Garino | 443.52 |
| Medical Records[2] | 26.35 |
| Montgomery County Sheriff's Department Records | 30.20 |
| Investigator's Expenses (Mr. Richard Reyna)[3] | 8,512.50 |
| United States District Court Filing Fee[4] | 60.00 |
| Total Out-of-Pocket Expenses | 9,072.57 |

[2]The Court has not included an award of expert fees in the amount of $400 for a review of medical records by Dr. Ralph Gray.

[3]The Court has not included duplicative fees paid for investigative services in the amount of $500 and $73.50 respectively which are contained in counsel's invoices to Mr. Garmong.

[4]To obviate the need for counsel to file a bill of costs, the Court deems it appropriate to award filing fees as "costs" pursuant to 42 U.S.C. § 1988.