**TOWN OF GRANTWOOD VILLAGE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 98–176L.**

United States Court of Federal Claims.

March 6, 2003 [1].

1. This opinion and accompanying judgment were originally issued on January 14, 2003. Plaintiff was never served with a copy of that opinion. Subsequently, the parties both identified two computational errors. Because of those errors, we vacated the prior judgment and opinion. This opinion is identical to our previous one with the exception that those errors are corrected.

Mark F. Hearne, II, St. Louis, Missouri, for the plaintiff. With him on the briefs, Amy E. Marchant.

William J. Shapiro, Environment & Natural Resources Division, General Litigation Section, Department of Justice, for the United States. With him on the briefs, Evelyn Kitay, Office of the General Counsel, Surface Transportation Board, of counsel.

## OPINION ON ATTORNEY FEES

BRUGGINK, Judge.

This is an action claiming an uncompensated taking of land. Specifically, plaintiff, the Town of Grantwood Village, claims that railbanking, preserving an otherwise abandoned railroad easement for future possible use, while permitting interim recreational use, constitutes a taking. This railbanking was imposed on plaintiff by the National Trails System Act, as amended, 16 U.S.C. § 1241 (Supp. II 1996). Liability on the part of defendant was determined in this and two other consolidated cases in *Glosemeyer v. United States,* 45 Fed.Cl. 771 (2000). On December 5, 2002, the court adopted a settlement by the parties in which they agreed that an easement for interim trail use approximately 30 feet in width currently burdens plaintiff's land. Additionally, an easement 100 feet in width has been taken by the United States for the purposes of future rail service. Defendant will pay plaintiff $19,000 as compensation and $11,530.39 in interest from the date of the taking, December 30, 1992, through December 1, 2002.

Accordingly, plaintiff is entitled to be reimbursed its costs and expenses under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) ("URA"), which provides for reimbursement for "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding" under the Tucker Act, 28 U.S.C. 1491 (2000). *See* 42 U.S.C. § 4654(c).[2] Plaintiff initially

---

2. Attorneys' fees may be reimbursed where the court renders judgment for the plaintiff or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his rea-

requested $479,565.00 for attorneys' fees and expenses of $26,724.79. After a final settlement was reached as to liability, plaintiff submitted a supplemental request for fees and expenses. The current request is for $491,385.60 in attorneys' fees and $28,722.97 in expenses. Defendant questions both the number of hours expended and the rates claimed.

## DISCUSSION

The court adopts the lodestar method for determining appropriate compensation, determining first the reasonable hours expended and then multiplying that figure by each attorney's reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Cloverport Sand & Gravel v. United States,* 10 Cl.Ct. 121, 122 (1986). Plaintiff has the "burden of demonstrating that the amount sought for attorneys' fees and costs meets statutory requirements." *Preseault v. United States,* 52 Fed.Cl. 667, 670 (2002) (citing *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933).

The amount sought reflects 1939.2 total hours for both attorneys and paralegals. Defendant urges the court to disallow certain time and costs, as well as to apply an overall percentage reduction. For reasons set forth below the court grants the plaintiff's application for reimbursement in the amount of $270,722.35 for attorneys' fees and expenses of $21,761.38, for a total reimbursement of $292,483.73.

### 1. *Number of Hours*

### a. Pre–Complaint Hours

■ Defendant argues that 414 hours of plaintiff's application for attorneys' fees and expenses are not allowable because they relate to litigation that preceded the current action. Before coming to the Court of Federal Claims, plaintiff brought a quiet title action in state court. That action was then removed to the District Court for the Eastern District of Missouri. The district court determined that under Missouri law, Pacific

Railroad Company had an easement by estoppel on plaintiff's property. This easement passed from Pacific Railroad to Missouri Pacific Railroad Company and eventually to Gateway Trailnet, Inc. The Eighth Circuit affirmed the decision of the District Court in *Grantwood Village v. Missouri Pac. R.R. Co.,* 95 F.3d 654 (8th Cir.1996), *cert. denied,* 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 216 (1997). It was not until March 13, 1998, after the conclusion of the quiet title action, that plaintiff filed a complaint alleging a taking under the Tucker Act.

Some of the hours claimed by plaintiff in its application for attorneys' fees relate to the quiet title proceeding, although it is not requesting compensation for the full amount of time necessary to bring that action. Instead, plaintiff seeks to recover only for those hours which it contends directly relate to the action now before this court. It argues that had it not gone first to district court, all of those pre-Court of Federal Claims costs for which it now seeks compensation would have been reimbursable. Neither the text of the URA nor the case law supports compensation under that rationale.

The URA permits a plaintiff to be reimbursed for reasonable fees and costs which are "actually incurred because of such proceeding." 42 U.S.C. § 4654(c). This can include expenses incurred in preparation of a complaint. *Yancey v. United States,* 915 F.2d 1534, 1543 (Fed.Cir.1990). However, expenses related to separate and unrelated actions are excluded. *Preseault,* 52 Fed.Cl. at 672 (denying reimbursement for appeal of an Interstate Commerce Commission decision, after which plaintiffs brought a takings claim); *Emeny v. United States,* 208 Ct.Cl. 522, 526 F.2d 1121, 1124 (1975) (denying reimbursement for fees and costs incurred during pre-complaint settlement negotiations).

The plaintiff mistakenly relies on *Paul v. United States,* 21 Cl.Ct. 415, 429 (1990). In *Paul,* the United States filed a Declaration of

---

sonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

42 U.S.C. § 4654(c).

Taking in the Eastern District of Kentucky. The district court transferred the claims of one defendant to the Claims Court. Included in plaintiff's compensation were expenses related to time before the Claims Court. The *Paul* case did not constitute two separate proceedings, however. The takings claim was simply transferred to the Claims Court. In the present case, the takings claim is distinct from the quiet title proceeding. The district court resolved the question of whether an easement in fact existed. Although this determination was clearly related to the taking claim, we hold that it is distinct within the meaning of the URA.

Plaintiff points the court to its recent rule revisions, specifically RCFC 9(h)(7), which states: "In any action for the payment of just compensation pursuant to the Fifth Amendment to the United States Constitution, identification of the specific property interest which plaintiff contends has been taken by the United States." From this, plaintiff argues that the litigation required to identify the "specific property interest ... taken" should be compensated under the URA. We disagree. RCFC 9(h)(7) merely embodies an assumption implicit in any taking proceeding involving real property—that there is a physically definable property interest at issue. As a convenience to defendant and the court, plaintiff is required to furnish that physical description. This requirement cannot fairly be used to characterize whatever steps plaintiff had to take to defend its property interest as "adjunct" to a taking claim. This is particularly true in the present case, when, if the quiet title action had been successful there would have been no need to come to this court. Plaintiff would have established that no trail legally existed. Once it was determined the trail did exist, however, the taking claim must assume the validity of the underlying government action. Therefore, plaintiff's time related to the quiet title action were not "incurred because of" the taking proceeding and are thus unallowable.

■ Defendant proposes denying all 414 hours spent prior to filing the complaint irrespective of whether they relate solely to the quiet title proceeding. We disagree. Costs attributable to the reasonable preparation of the complaint are reimbursable under the URA. *Yancey*, 915 F.2d at 1543. After careful examination, the court has determined that the plaintiff may not be compensated for 290.8 hours and $6,900.29 in expenses because they were not incurred as a result of this proceeding. The remaining time billed before filing the complaint, however, is compensable as directly related to reasonable preparation. The plaintiff's application for attorneys' fees will be adjusted accordingly.

b. Time Spent on Valuation Software

■ Plaintiff requests compensation for time related to the acquisition and implementation of the valuation software, MetroScan. This time consists primarily of paralegal hours, as well as some equity partner hours. Defendant identifies 82 paralegal hours and 2.3 equity partner hours for installation of the software as well as its utilization in this case. In addition, plaintiff seeks to be reimbursed for appraisal fees totaling $10,562.00. Defendant claims that these hours are per se unreasonable, arguing that the plaintiff should not be compensated both for time spent utilizing MetroScan as well as the cost of appraisals. However, plaintiff is entitled to utilize reasonable means, both valuation software and experts, to determine the value of property allegedly taken. The approximately 85 hours for which plaintiff requests compensation are not merely for software installation and fixing glitches, as defendant implies. Instead, the time includes locating parcels along the railroad easement, inputting information about each of these parcels into the software program and generating reports from the software. Approximately 85 hours is a reasonable amount of time to complete this task, especially considering that plaintiff utilized paralegals for the vast majority of this time.[3]

---

**3.** The time for which plaintiff requests reimbursement here are different than the costs for upgrading WordPerfect Office 2000 which were disallowed in *Preseault*, 52 Fed.Cl. at 680. In *Preseault*, the costs which were disallowed were overhead. Here, the hours are direct costs related to the valuation of the easement. They are therefore allowable.

### c. Correcting the Complaint

■ Plaintiff claims 37 hours for time spent amending its complaint as a result of an unpublished opinion issued in the related case of *Illig v. United States*, No. 98–934, slip op. at 4 (Fed.Cl. Nov. 12, 1999). The opinion in *Illig* dealt with the same December 30, 1992 interim trail use agreement involved in this case. In *Illig* we established the date of taking as December 30, 1992. Plaintiff amended its complaint to reflect the ruling in *Illig*. The amendment was not a result of plaintiff's error, as defendant contends. The request for compensation for these hours is reasonable.

### d. Administrative and Clerical Entries

■ Defendant argues that purely administrative and clerical tasks should not be billed at the equity partner or mid-level associate level. We agree. The defendant identifies a total of 62.4 such hours. Although several of the entries are, indeed, purely administrative, many administrative and clerical activities were combined with other compensable activities. The court will only reduce attorneys' fees by the 27.7 hours exclusively spent on administrative tasks. Billing those tasks at paralegal rates is reasonable. Plaintiff already attributed 8.9 of these hours to paralegals, however. Thus, only a total of 18.8 hours will be altered to reflect paralegal rates.

### e. Discussions with the Media

■ Only those costs attributable to the litigation itself are compensable under the URA. Defendant contends that 11.1 hours are not allowable because they are for the non-legal task of discussions with the media. While we agree that discussions with the media should not be recovered,[4] all of the billing items defendant identifies include time spent on compensable tasks, making separation difficult. Because nothing in the orders or opinions discussed by plaintiff required conversation with the media, the court finds defendant's suggestion that 6.2 hours be removed for discussions with the media to be reasonable. Plaintiff's compensation for attorneys' fees will be reduced accordingly by 6.2 hours.

### f. Travel Time

Defendant contests plaintiff's requested compensation for 44.5 hours of travel time. We agree with defendant's suggestion that travel time should only be compensated at a 50% rate. *See, e.g., McMahon v. Novello*, 192 F.Supp.2d 54 (W.D.N.Y.2001). In some instances, plaintiff combined non-travel related tasks with travel in one billing item. It is therefore not reasonable to reduce the entire amount to a 50% travel rate. The court determined that utilizing the shortest time billed for travel between Washington, D.C. and St. Louis was the appropriate delineation between travel and non-travel for these entries. Mr. Hearne's trip from St. Louis to Washington, D.C. on May 3, 2001 for three hours served as a base line. After carefully reviewing plaintiff's records, the court concludes that only 26.5 of these hours are properly attributable to travel. These hours, therefore, will be compensated at 50% of the respective counsel's normal rate.

### g. Research of Attorneys Fees

■ Defendant challenges what it characterizes as nearly 320 hours spent researching and preparing plaintiff's attorney's fees petition. Defendant proposes that this amount should be reduced to 85 hours. It argues that "[p]rinting out the fee petition should have only taken a few keystrokes by a paralegal and a quick review by the supervising attorney." Def. Br. at 9. The nature of the hours challenged has been mischaracterized by defendant, however. The hours defendant questions were not simply for preparation of the application for attorneys' fees.

The overwhelming majority of the hours contested, 251.8, occurred when the parties were attempting to reach settlement, in part

---

**4.** Plaintiff has not argued that such discussions were prompted by the need to give notice to potential claimants. This appears unlikely, in any event, as the media discussions were after any potential claimants could have joined this suit. The timing of the identified media discussions primarily coincides with the issuance of *Glosemeyer*, 45 Fed.Cl. 771, which determined that the Katy Trail constituted a new easement on plaintiff's land.

on the issue of fees. Plaintiff offers a summary of these settlement discussions which stretched from early 2001 until just a few weeks ago. Plaintiff's initial request for attorneys' fees was $391,542 plus interest. During the negotiations, plaintiff reduced its request to $286,030. Although defendant increased its offer for attorneys' fees from the initial $150,000 to $227,052, plaintiff contends that the parties could not close this gap. It is clear from the plaintiff's brief delineation of settlement discussions that the hours claimed were not simply devoted to calculating attorneys' fees. There was real disagreement between the parties. Throughout this time period, they jointly filed status reports informing the court that there was a high likelihood of settling all remaining issues. The court has no reason to doubt the veracity of these statements and the good faith of settlement negotiations. Plaintiff may be compensated for this time.

### 2. The Hourly Rate

■ A reasonable hourly rate should be determined by examining the "prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Lathrop & Gage, plaintiff's counsel, argues that it is a large regional firm with offices in cities such as Kansas City, St. Louis, Boulder and Washington D.C. The size and complexity of this litigation, plaintiff argues, should lead the court to look at current nationally averaged rates. Plaintiff offers the 2002 rate survey by the Association of Law Firm Administrators, which reflect the following rates: equity partner at $364 per hour, senior associate at $235 per hour, mid-level associate at $196 per hour and paralegal at $114.50 per hour.

In *Rupert v. Sec'y Dep't of Health & Human Servs.,* 52 Fed.Cl. 684, 687 (2002), the relevant community is defined as the geographic area in which the plaintiff's attorney practices. In this case, the plaintiff's attorneys practice in St. Louis, Missouri. The relevant legal community is therefore the

attorneys who practice in the St. Louis area, in firms of a similar size. The court, therefore, will not rely on the nationwide survey suggested by plaintiff.

Similarly, the court does not rely on the Missouri Bar economic survey which defendant offers as its first alternative. Plaintiff rightly contends that the skills needed to litigate a complex case in St. Louis are not appropriately represented by a state-wide average. Defendant also puts forward eight cases, spanning 1996 to 1999, in which attorneys fees were awarded. Each of these cases were heard in either the District Court for Kansas or the District Court for the Eastern District of Missouri, which embraces St. Louis. In several of the cases, Lathrop & Gage represented one of the parties. In addition, defendant provided the 2001 National Law Journal survey and an Aspen Law & Business survey of paralegal rates. Each of these surveys provides rates for St. Louis firms for those years. Plaintiff does not challenge the accuracy of these surveys. Defendant has alternatively put forward rates for the St. Louis area based on this data and fills in rates not otherwise given. The court finds that defendant's proposed rates for the St. Louis area are reasonable.[5]

■ We note, moreover, that reasonable rates are determined based on historical, not current fees. Plaintiff requests that if the court rejects its application for fees based on a the Association of Law Firm Administrators survey that fees be awarded based on current rates. Plaintiff relies on *Florida Rock Indus. v. United States,* 9 Cl.Ct. 285, 292 (1985), as support for the notion that current rates may be used. In *Florida Rock,* however, the court found that the rates proposed were a reasonable rate of compensation for the entire attorneys' fees application. The court in *Florida Rock* relied upon the proposed rates because they were reasonable, not because they were current. The court agrees with *Preseault,* 52 Fed.Cl. at 677, that compensating plaintiff based on present attorneys' rates would be tantamount to providing interest on attorneys fees.

---

**5.** Defendant did not propose billing rates for those hours charged for 1997. Those hours billed in 1997 are few, and charged at the end of

that year. Therefore, it is reasonable to bill these few hours at the rates defendant proposes for 1998.

Whether the interest is characterized as the time value of money, lost opportunity costs, or simply interest, payment of interest on attorneys' fees is outside the scope of the URA. *See Shelden v. United States*, 41 Fed. Cl. 347, 349 (1998).

In sum, hours billed by equity partners will be compensated at the following rates: $170.00 per hour for 1997–1998, $190.00 per hour for 1999, $200.00 per hour for 2000, $250.00 per hour for 2001, and $275.00 per hour for 2002. Hours billed by senior associates will be compensated at $140.00 per hour for 1999.[6] Mid-level associate hours will be reimbursed for 1997–1998 at $110.00 per hour, $120.00 per hour for 1999, $140.00 per hour for 2001, and $150.00 per hour for 2002.[7] Those hours billed for junior associates will be reimbursed for 1998–1999 at $100.00 per hour and $120.00 per hour for 2000. Hours billed for paralegal services will be reimbursed at $90.00 per hour for 1997–2001. Those hours billed in 2002 for paralegal services will be reimbursed at $95.00 per hour.

### 3. General Percentage Reduction

Defendant also urges the court to apply an overall twenty percent reduction to plaintiff's fee request. It offers two reasons. First, that a percentage reduction would eliminate excessive and redundant billing for conference calls, client contact and discussions with counsel in related cases. Second, it argues that a claim requiring only one motion for summary judgment, which resulted in a small recovery, should not entail such high attorneys' fees. The court will address these arguments first as they pertain to plaintiff's original request for reimbursement and then as they affect plaintiff's supplemental request for attorneys' fees.

According to defendant's calculations, plaintiff spent almost 87 hours communicating with attorneys in related cases. A closer examination reveals that this time includes research about the cases' possible consolidation, appraisal and valuation discussions, as well as a joint effort on filings before the court. These activities were useful to promote judicial economy. The court finds these hours to be reasonable.

Defendant also argues that this case was simple, in that only one motion for summary judgment should not have required so many hours. Defendant also urges that plaintiff's attorneys' fees request of $491,385.60 is disproportionate to the amount of the settlement in this case, $19,000 for just compensation and $11,530.39 in interest. We disagree. Two factors drove a large attorneys' fee request. First, the plaintiff initially believed the tract of land taken was substantially larger than the one finally settled upon.[8] This is evident from the plaintiff's amendment of its complaint. Plaintiff was reasonable to invest more when it believed that the recovery would be substantial. In the end, although the recovery was small, plaintiff did not act unreasonably based on its initial understanding.

Furthermore, plaintiff rightly points out that defendant has aggressively litigated the rails-to-trails cases. The settlement discussions in this case were long and complex. Once the adjustments to the fee request discussed above are taken into account there is no reason to think any particular hour was misspent or redundant. Additionally, plaintiff asserts, and the court has no reason to doubt, that the time expended in this case has served to promote lower fees and a quicker resolution of the related *Illig* case. An overall reduction of attorneys' fees would be improper.

The court finds defendant's arguments more convincing, however, when applied to the supplemental request for attorney's fees. Plaintiff requests payment for 216.5 additional hours for the period from August 15, 2002

---

**6.** The only year in which plaintiff requests compensation for hours billed by a senior associate is 1999.

**7.** Plaintiff concedes that Ms. Trueworth should be considered a Junior Associate. It also concedes that 5.5 hours of Mr. Hearne's time should have been billed at the senior associate rate. The court also finds that Amy Marchant, who became a member of the bar in 1998, should be billed as a junior associate for the period 1998–2000.

**8.** Plaintiff contends that the initial tract of land which they believed to be taken was more than ten times the size of the tract upon which they eventually settled.

to December 12, 2002.[9] This supplemental petition is unlike plaintiff's first request, as to which the court was willing to recognize that much of the time defendant identified as relating to attorneys' fees was actually devoted to settlement discussions. In the supplemental request, however, over half the time, 128.8 hours, relates to drafting plaintiff's attorneys' fee petition. This is an unreasonable amount, especially considering that plaintiff had already requested reimbursement for part of its attorneys' fees in its original request. The amount is more than double that billed for the year up until that point. Plaintiff requests only slightly larger reimbursements for the individual years of 1998 or 2000. The court is sympathetic to the amount of time necessary to finalize a settlement agreement, however, the supplemental request does not reflect a reasonable assessment of the time required to prepare an attorneys' fee petition. Plaintiff's supplemental request is therefore reduced by 30%. Based on the above adjustments, plaintiff is entitled to recover $270,722.35 in attorneys' fees.

### 4. Costs

Plaintiff's initial request for costs was for $26,724.79. Plaintiff later conceded that $178.61 for meals were inappropriately included in its initial request. Plaintiff's supplemental request seeks an additional $2,176.79 in costs. Thus, plaintiff actually seeks $28,722.97.[10] In addition to the $6,900.29 in disallowed costs addressed above, $61.30 will not be reimbursed because the charge is for meals. Plaintiff's request for compensation of costs is otherwise reasonable in light of the nature of this case. Plaintiff is entitled to $21,761.28 in costs.

### CONCLUSION

The parties informed the court that the United States has previously paid the amount of the settlement. Accordingly, the clerk is directed to enter final judgment in

the amount of $292,483.73 for fees and expenses pursuant to 42 U.S.C. § 4654(c). No other costs.

---

9. Plaintiff mistakenly included 5 hours billed by Ms. Marchant on August 15, 2002 which had been previously included in its initial request. The court reduced plaintiff's supplemental request by this amount.

10. Plaintiff's Supplemental Request states that it seeks $28,889.68 in costs. This amount, however, is not supported by the documentation provided to the court. The court assumes that the final sum provided by plaintiff is a mathematical error.