Marty and Kellie AVERA, parents
of Connor Avera, a minor,
Petitioners,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Respondent.

No. 04–1385V.

United States Court of Federal Claims.

Filed Under Seal Feb. 7, 2007.[1]

Reissued Feb. 22, 2007.

Robert T. Moxley, Robert T. Moxley, P.C., Cheyenne, Wyoming, for Petitioners.

Julia W. McInerny, with whom were Peter D. Keisler, Assistant Attorney General, Timothy P. Garren, Director, Vincent J. Matanoski, Acting Deputy Director, and Catharine E. Reeves, Assistant Director, Civil Division, Torts Branch, U.S. Department of Justice, Washington, D.C., for Respondent.

*OPINION AND ORDER*

WHEELER, Judge.

This case is before the Court for review of the Special Master's decision awarding attorneys' fees and costs to petitioners. *Avera v.*

---

1. Pursuant to Rule 18(b) of the Court's Vaccine Rules, each party is afforded 14 days from the date of issue to object to the public disclosure of any information furnished by that party. Neither party having filed such an objection, the Court today publishes this Opinion and Order without redaction.

*Sec'y of HHS,* No. 04–1385V (Fed.Cl. Spec.Mstr. Aug. 29, 2006). Petitioners' counsel maintains his law practice in Cheyenne, Wyoming, and is experienced in handling cases before this Court under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa–1 *et seq.* (2000) ("the Vaccine Act"). The Special Master awarded petitioners $12,073.77 for attorneys' fees, costs, and personal expenses. In an amended fee application, petitioners increased their request to $18,576.06, arguing that attorney billing rates for Washington, D.C. should apply instead of the billing rates for Cheyenne, Wyoming. Relying upon a "forum rule" first adopted in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983), *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985), petitioners contend that the applicable rates for the location of the forum should govern. Petitioners also have moved for interim payment of the amount approved by the Special Master, and for certification of the issue to the U.S. Court of Appeals for the Federal Circuit.

Respondent opposes petitioners' request to apply the "forum rule," but does not contest the Special Master's award of $12,073.77 in attorneys' fees, costs, and personal expenses based upon Cheyenne, Wyoming rates. Respondent also opposes petitioners' request for interim payment, and for certification of the issue to the Federal Circuit.

For the reasons stated below, the Court declines to adopt the "forum rule" for payment of attorneys' fees and costs under the Vaccine Act. The Court affirms the August 29, 2006 award of the Special Master, granting petitioners' request for $12,073.77. Petitioners' requests for interim payment and for certification to the Federal Circuit are denied.

### Background

On August 26, 2004, petitioners Marty and Kellie Avera, parents of Connor Avera, filed a petition for recovery under the Vaccine Act. Petitioners alleged that their son suffered an encephalopathy resulting from one or more of three vaccines administered to him on August 29, 2001. On December 21, 2005, the Special Master issued his decision denying entitlement due to petitioners' failure to prove their claim. The Special Master ruled that the Vaccine Act prohibits an award of compensation "based upon the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." *Avera v. Sec'y of HHS,* No. 04–1385V, slip op. at 2 (Fed.Cl.Spec.Mstr. Dec. 21, 2005) (quoting 42 U.S.C. § 300aa–13(a)). The Special Master did not conduct any factual hearings due to petitioners' November 28, 2005 request that the case be decided on the record.

On February 27, 2006, petitioners filed their application for attorneys' fees and costs.[2] In that application, petitioners requested an hourly rate of $200 for Robert Moxley, and $100 to $130 per hour for Julie Hernandez. In a sworn declaration, Mr. Moxley stated that he was the lead attorney for petitioners, and that "the rates my firm has charged in this case are the same as we charge all other clients for the nature of services rendered." (Moxley Decl., Feb. 23, 2006, ¶ 4). Mr. Moxley explained that Ms. Hernandez, a law firm associate, performed the bulk of the work on this petition, under his supervision. *Id.* ¶ 2. Mr. Moxley increased the hourly rate for Ms. Hernandez from $100 to $130 after her October 28, 2005 admission to the Wyoming bar.

On March 27, 2006, petitioners amended their initial fee application, arguing that use of the "Laffey Matrix" should result in a recovery of $18,576.06. Petitioners asserted that the "Laffey Matrix" is utilized "for counsel practicing in Washington, D.C. in the area of complex federal litigation." (Amended Fee App., Mar. 27, 2006, at 2–3). In the amended application, petitioners requested an hourly rate of $574 for Robert Moxley through May 2005, instead of the $200 rate requested in the initial petition. *Id.* at 6–9.

---

2. A petitioner under the Vaccine Act may recover reasonable attorneys' fees and costs even if the Special Master or the Court does not award compensation on the claim, provided that the petition was brought in good faith and there was a reasonable basis for the claim. 42 U.S.C. § 300aa–15(e)(1); *see Martin v. Sec'y of HHS,* 62 F.3d 1403, 1405–06 n. 3 (Fed.Cir.1995).

From June 2005 forward, petitioners requested $598 per hour for Mr. Moxley. *Id.* at 9–12. Petitioners also increased the requested hourly rate for Ms. Hernandez to $130 through May 2005, to $136 beginning in June 2005, and to $240 after her admission to the Wyoming bar. *Id.* at 6–12.

On August 7, 2006, the Special Master requested additional information from petitioners, and ordered them to submit a revised summary of attorneys' fees, costs, and personal expenses by August 16, 2006. On that date, petitioners filed a revised statement of attorneys' fees and costs adjusted to "Laffey Matrix" rates, a 38–page memorandum of law supporting the recovery of "Laffey Matrix" rates, and sworn declarations from four practitioners and an economist. In one of these declarations, Mr. Moxley provided extensive anecdotal information on his litigation experiences under the Vaccine Act to support the recovery of Washington, D.C. hourly rates instead of Cheyenne, Wyoming rates.

On August 29, 2006, the Special Master issued his decision on attorneys' fees, costs, and personal expenses. *Avera v. Sec'y of HHS,* No. 04–1385V (Fed.Cl.Spec.Mstr. Aug. 29, 2006). The Special Master awarded petitioners $12,073.77, but rejected petitioners' argument for adoption of the "forum rule" and the application of the "Laffey Matrix." On September 28, 2006, petitioners timely moved for review of the Special Master's award, or in the alternative, for certification of the "Laffey Matrix" issue to the Federal Circuit. Counsel for the parties have submitted briefs on the issue of whether the "Laffey Matrix" should apply, and the Court heard oral argument on November 30, 2006.

### Standard of Review

This Court has jurisdiction under the Vaccine Act to review a Special Master's decision upon the timely request of either party. *See* 42 U.S.C. § 300aa–12(e)(1)–(2). On review, the Court may: "(A) uphold the [Special Master's] findings of fact and conclusions of law; (B) set aside any findings of fact or conclusion of law ... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..., or; (C) remand the petition to the special master for further action in accordance with the court's direction." 42 U.S.C. § 300aa–12(e)(2)(A)–(C). Findings of fact receive deferential review under an "arbitrary and capricious" standard, while legal conclusions are reviewed *de novo,* and discretionary rulings are reviewed for "abuse of discretion." *Munn v. Sec'y of HHS,* 970 F.2d 863, 870 n. 10 (Fed. Cir.1992); *see also Lampe v. Sec'y of HHS,* 219 F.3d 1357, 1360 (Fed.Cir.2000); *Johnson v. Sec'y of HHS,* 33 Fed.Cl. 712, 720 (1995), *aff'd* 99 F.3d 1160 (Fed.Cir.1996) (table).

The issue of whether the Special Master should apply a "home town rule" or a "forum rule" in determining reasonable attorneys' fees under the Vaccine Act is a question of law which the Court will review *de novo.*

### Discussion

A. *The Method for Fee Awards in Vaccine Cases*

█  In cases brought under the Vaccine Act, the Court historically has used the two-step "lodestar" method for determining the reasonable fee to be awarded. *See, e.g., Saxton v. Sec'y of HHS,* 3 F.3d 1517, 1521 (Fed. Cir.1993); *Rupert v. Sec'y of HHS,* 55 Fed. Cl. 293, 298 (2003); *Guy v. Sec'y of HHS,* 38 Fed.Cl. 403, 405 (1997); *Edgar v. Sec'y of HHS,* 32 Fed.Cl. 506, 507–509 (1994); *Hines v. Sec'y of HHS,* 22 Cl.Ct. 750, 753–54 (1991); *Morris v. Sec'y of HHS,* 20 Cl.Ct. 14, 27 (1990); *Davis v. Sec'y of HHS,* 19 Cl.Ct. 395, 402 (1990); *Whitledge v. Sec'y of HHS,* 19 Cl.Ct. 144, 149 (1989); *Willcox v. Sec'y of HHS,* 18 Cl.Ct. 870, 874 (1989); *Pusateri v. Sec'y of HHS,* 18 Cl.Ct. 828, 829–30 (1989); *Bell v. Sec'y of HHS,* 18 Cl.Ct. 751, 760 (1989); *Newton v. Sec'y of HHS,* 18 Cl.Ct. 665, 669–70 (1989); *Dunham v. Sec'y of HHS,* 18 Cl.Ct. 633, 641 (1989).

Under the "lodestar" method, the first step is to multiply the number of hours expended on the litigation times a reasonable hourly rate. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The "centerpiece" of the lodestar method is the prevailing market rate for an attorney's services. *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The pre-

vailing market rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541. Our Court has endorsed a "traditional geographic rule" to define the attorney's relevant community. *Rupert v. Sec'y of HHS,* 52 Fed.Cl. 684, 688–91 (2002) (discussing prevailing market rate for attorneys practicing in Boston, Massachusetts). The fee applicant bears the burden of establishing the rate, and is given wide latitude to present evidence. *Town of Grantwood Village v. United States,* 55 Fed.Cl. 481, 484 (2003); *Rupert,* 52 Fed.Cl. at 688. Novelty of the issues, the complexity of the litigation, and the quality of representation are key elements in setting the rate. *Blum,* 465 U.S. at 899, 104 S.Ct. 1541; *Pierce v. Underwood,* 487 U.S. 552, 573, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

In the second step of the "lodestar" method, the Court may make upward or downward adjustments to set the fee in line with the services rendered in the particular case. *Blanchard,* 489 U.S. at 94, 109 S.Ct. 939; *Blum,* 465 U.S. at 897, 104 S.Ct. 1541. The lodestar in each case carries a strong presumption and "the burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant." *Blum,* at 898, 104 S.Ct. 1541. "[A]n upward adjustment [is appropriate] only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to what one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Id.* at 899, 104 S.Ct. 1541.

### B. *Determining the Relevant Community*

While recognizing the considerable body of law arrayed against them, petitioners characterize the many Vaccine Act fee decisions as "misbegotten legal pronouncements." (Pet. Reply, June 19, 2006, at 4). As observed by the Special Master, petitioners are seeking "a seminal legal ruling on attorneys' fees," and the "implementation of a new paradigm." (*Avera,* Aug. 29, 2006, slip. op. at 3).

In essence, petitioners argue that the "home town" levels for compensation under the Vaccine Act are insufficient to attract counsel to represent vaccine-injured parties. (Pet. Mot. for Review, Sept. 28, 2006, at 2). With regard to Mr. Moxley's personal circumstances, petitioners assert that the "home town" level of compensation through his 18 years of experience has not been fully compensatory, and has not been "reasonable" as that term is used in the Vaccine Act. *Id.* Petitioners claim that "the low levels of compensation forced upon petitioners' counsel by the Vaccine Program—which includes the routine short-changing of experts—gives the government an unconscionable advantage in the litigation." *Id.* at 2–3. Petitioners contend that the "Laffey Matrix" represents the most reasonable "market rate" for counsel practicing before the federal courts in Washington, D.C. *Id.* Petitioners characterize Vaccine Act cases as "complex federal litigation" which would bring their counsel under the "forum rule" for recovery of attorneys' fees. *Id.*

In analyzing petitioners' argument for application of a "forum rule," the Court sees many flaws. The "Laffey Matrix" applies to limited fee-shifting statutes involving the United States Attorney's Office for the District of Columbia where the plaintiff has been deemed "the prevailing party." (Declaration of Daniel F. Van Horn, May 17, 2006). The "Laffey Matrix" may apply, for example, to prevailing parties in litigation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(k), or the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E). In such cases, if the plaintiffs do not prevail, the attorneys do not recover their fees from the Government. In contrast, Vaccine Act attorneys may recover their fees whether they prevail or not, so long as the petition is filed in good faith, and the claim has a reasonable basis. 42 U.S.C. § 300aa–15(e)(1).

The Vaccine Act, unlike other federal fee-shifting statutes, mandates a streamlined case adjudication. The statute directs the Court of Federal Claims to "provide for a less adversarial, expeditious, and informal proceeding for the resolution of petitions," and to "include flexible and informal stan-

dards of admissibility of evidence." 42 U.S.C. §§ 300aa–12(d)(2)(A)–(B). The Court's rules state that "[t]he special master may decide a case on the basis of written filings without an evidentiary record." Vaccine Rule 8(d). These procedures are in contrast to formal trials before judge or jury in the U.S. District Court.

In many cases brought under the Vaccine Act, the parties have only minimal contact with Washington, D.C. In the present case, the petitioner and counsel are not located in Washington, D.C., there were no hearings in Washington, D.C., and counsel did not travel to Washington, D.C. for any purpose. All of the legal services were performed in Cheyenne, Wyoming, a less costly legal market. If hearings are held in Vaccine Act cases, the Court often will travel to the location requested by petitioner to receive evidence. Under circumstances where no portion of the legal services were performed in Washington, D.C., the application of the "forum rule" cannot be justified. *see Davis v. U.S. Env. Prot. Agency,* 169 F.3d 755, 759 (D.C.Cir. 1999) (per curiam) (In litigation under the fee-shifting provisions of the Clean Air Act, the forum rule will not apply where the attorneys practice in "less expensive legal markets and perform the bulk of their work on the case at home in those markets.").

With regard to a "national rate" for recovery of attorneys' fees, our Court has considered and rejected such a proposition. In *Grantwood Village,* 55 Fed.Cl. 481, involving a determination of attorneys' fees to a prevailing party under the Uniform Relocation Assistance and Real Property Acquisition Policies Act, the Court endorsed a "geographic approach" in awarding fees to a large firm with offices in Kansas City, St. Louis, Boulder, and Washington, D.C. *Id.* at 487–88. The plaintiff's attorneys sought a fee award at "current nationally averaged rates" because of the size and complexity of the litigation. *Id.* at 487. Given that the plaintiff's attorneys practiced in St. Louis, Missouri, the Court rejected national survey rates, finding "[t]he relevant legal community" to be "attorneys who practice in the St. Louis area, in firms of a similar size." *Id.*

The arguments for a national fee rate based upon the novelty, complexity, or specialty of vaccine practice fail to recognize that those factors are subsumed into the "lodestar" method, and would not constitute a proper basis for enhancing the fee award. *Rupert,* 55 Fed.Cl. at 304; *Rupert,* 52 Fed. Cl. at 686–87; *Applegate v. United States,* 52 Fed.Cl. 751, 762–773 (2002). At most, a Court may make an upward or downward adjustment as necessary to keep the fee award in line "with the nature of the services rendered in a particular case." *Rupert,* 52 Fed.Cl. at 686. Under the Vaccine Act, there is little risk of non-payment of fees, and no distinction between the success, loss, or withdrawal of a claim for an alleged vaccine-related injury. 42 U.S.C. § 300aa–15(e)(1)(B). *See also Greene v. Sec'y of HHS,* 19 Cl.Ct. 57, 65 (1989) (Any risk "should have been eliminated with counsel's initial investigation and counsel's decision to prosecute the case," thereby satisfying the good faith and reasonable basis prerequisites).

This is not a case where the Court is lacking local market information for Cheyenne, Wyoming. Petitioners' counsel received a fee award consistent with "lodestar" principles in *Hart v. Sec'y of HHS,* 2004 WL 3049766 (Fed.Cl.Spec.Mstr. Dec. 17, 2004) (awarding Mr. Moxley $100 to $200 per hour from 1994 to 2004). Other awards to petitioners' counsel include: *Gallagher v. Sec'y of HHS,* 2002 WL 1488759 (Fed.Cl.Spec.Mstr. May 22, 2002) (hourly rate of $175 awarded); *Barnes v. Sec'y of HHS,* 1999 WL 797468, *5 (Fed.Cl.Spec.Mstr. Sept. 17, 1999) (reasonable rate for Mr. Moxley is $160 per hour for work performed after 1998); *Walker v. Sec'y of HHS,* 1992 WL 92243 (Cl.Ct.Spec.Mstr. Apr. 10, 1992) (hourly rate of $100 requested and awarded); *Estabrook v. Sec'y of HHS,* 1991 WL 225096 (Cl.Ct. Spec. Mstr. Oct. 16, 1991 (same)).

Much of Petitioners' argument is focused on the delays that counsel has experienced in receiving fee payments under the Vaccine Act. (Moxley Decl., Aug. 15, 2006). Counsel cites a number of examples where he or his law firm made substantial fee investments, but did not receive payment until years after

the legal fees were incurred. *Id.* Counsel attributes these delays both to lengthy proceedings in the Court, and to regular fee objections asserted by Respondent. *Id.* As much as the Court would like to authorize interim fee payments to petitioner's counsel where warranted, such relief is not authorized by the Vaccine Act. The Special Master is empowered to award reasonable attorneys' fees as part of compensation, but only after a petitioner receives the Special Master's final decision on the merits, and makes the required election to accept or reject the Special Master's decision. 42 U.S.C. § 300aa-15(f)(1).

Similarly, a Court cannot increase a fee award because of a delay in payment. *Applegate,* 52 Fed.Cl. at 770 (citing *Library of Congress v. Shaw,* 478 U.S. 310, 321, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986)). Compensating for delay would be the same as paying interest, and "interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." *Id.* (quoting *Shaw,* 478 U.S. at 311, 106 S.Ct. 2957).

For all of the above reasons, the Court must follow the "lodestar" method used to determine attorneys' fees under the Vaccine Act. The applicable market rate is the community where the attorney maintains an office and practices law. As the Court emphasized during oral argument, a Cheyenne, Wyoming attorney would receive a significant windfall if compensated at Washington, D.C. hourly rates. (Tr. 14–16).[3] In Cheyenne, a practicing lawyer does not have anywhere near the operational costs, such as office space, clerical support, and associate lawyers, as in Washington, D.C. *Id.* The Court cannot justify the payment of $574 to $598 per hour to a Cheyenne lawyer who normally charges $200 per hour. Accordingly, the Special Master's August 29, 2006 decision is affirmed.

**C.** *Interim Payments of Fees are Not Authorized.*

■ As noted above, the Court lacks authority to award Petitioners an interim payment of fees while they are pursuing a greater recovery on appeal. The boundaries of this Court's review are set by the Vaccine Act. *see Beck v. Sec'y of HHS,* 924 F.2d 1029, 1036 (Fed.Cir.1991) (Court of Federal Claims "was established under Article I of the Constitution ... and its power is limited to that which Congress has expressly given to it"); *Johns–Manville Corp. v. United States,* 893 F.2d 324, 327 (Fed.Cir.1989) (Court does not have authority to award costs where it lacks jurisdiction, having authority only to dismiss the case). The Vaccine Act does not provide for the interim payment of fees, and therefore the Court cannot grant interim payment.

**D.** *Certification to the Federal Circuit is Not Warranted.*

■ Petitioners have requested in the alternative that the Court certify to the Federal Circuit the question of whether a "forum rule" and the "Laffey Matrix" should apply to attorneys' fee claims under the Vaccine Act. To certify a question to the Federal Circuit under 28 U.S.C. § 1292(d)(2), the Court must find the existence of "a controlling question of law ... with respect to which there is substantial ground for difference of opinion." The Court also must find that "an immediate appeal from that order may materially advance the ultimate termination of the litigation." *Id.* These criteria are "to be applied strictly to preserve the important policies that underlie the final judgment rule, *i.e.,* avoiding piecemeal litigation, avoiding harassment due to separate appeals from the same litigation, and promoting efficient judicial administration." *American Airlines, Inc. v. United States,* 71 Fed.Cl. 744, 745 (2006) (quoting *Pause Tech. LLC v. TiVo, Inc.,* 401 F.3d 1290, 1293 (Fed.Cir.2005)).

---

3. *see Davis v. EPA,* 169 F.3d at 760 (awarding Washington D.C. hourly rates to attorneys practicing in less expensive markets "would produce windfalls inconsistent with congressional intent."); *see also Pennsylvania v. Delaware Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ("[t]hese

[fee shifting] statutes were not designed as a form of economic relief to improve the financial lot of attorneys."); *City of Riverside v. Rivera,* 477 U.S. 561, 580, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality) (Congress did not intend statutory fee awards to produce windfalls).

In the present case, the Court cannot find that there is a "controlling question of law" as to which there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(d)(2). The relevant case law uniformly has looked to the home town market of attorneys litigating under the Vaccine Act as the basis for applying the "lodestar" method. Petitioners' disagreement with that method for awarding fees does not create a controlling question of law. Accordingly, the Court declines to certify to the Federal Circuit the issue of whether the "forum rule" should apply instead of the "home town" rule.

### Conclusion

Based upon the foregoing, Petitioners' requests for review of the Special Master's August 29, 2006 decision, for interim payment of fees, and for certification to the U.S. Court of Appeals for the Federal Circuit, are DENIED. The Special Master's August 29, 2006 decision awarding attorneys' fees, costs, and personal expenses, is AFFIRMED. The Clerk shall enter Judgment for Petitioners for $12,073.77 in attorneys' fees, costs, and personal expenses.

IT IS SO ORDERED.