DAVIS COUNTY SOLID WASTE MAN-
AGEMENT AND ENERGY RECOV-
ERY SPECIAL SERVICE DISTRICT, a
Utah political subdivision, Petitioner,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
Respondent.

No. 95–1611.

United States Court of Appeals,
District of Columbia Circuit.

Feb. 26, 1999.

On Petitioner's Motion for Attorneys' Fees.

Before: WALD, GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

In 1995 the Environmental Protection Agency ("EPA") promulgated standards pursuant to the Clean Air Act governing the combustion of municipal solid waste ("MSW"). *See* Standards of Performance for New Stationary Sources and Emission Guidelines for Existing Sources: Municipal Waste Combustors, 60 Fed.Reg. 65,387 (1995). The standards addressed the emissions of various substances and mixtures such as mercury and hydrogen chloride. Davis County Solid Waste Management and Energy Recovery Special Service District ("Davis County" or "petitioner") and others challenged the standards, arguing, *inter alia,* that EPA exceeded its statutory authority

"because [the standards] are based on the aggregate MSW combustion capacity ('MSW capacity') of the plant at which a [municipal waste combustor] unit is located, rather than on the MSW capacity of the [municipal waste combustor] unit." *See Davis County Solid Waste Management v. United States EPA,* 101 F.3d 1395, 1397 (D.C.Cir.1996), *amended by* 108 F.3d 1454 (D.C.Cir.1997) (per curiam). We agreed, vacated the standards in part, and remanded to EPA. *See id.* at 1411–12, *amended by* 108 F.3d at 1460.

The Clean Air Act provides for the recovery of litigation costs: "In any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate." 42 U.S.C. § 7607(f) (§ 307(f) of the Clean Air Act). After negotiations between Davis County and EPA over the proper level of recovery failed, Davis County petitioned the court for an award of $323,782.21 (subsequently revised to $314,074.71).[1] EPA concedes that an award of litigation costs is appropriate but disputes the amount. Specifically, EPA argues that (1) the fees paid to Dr. H. Gregor Rigo, who petitioner characterizes as an "expert witness," should not be recovered, (2) attorney fees calculations should not be based on District of Columbia rates because Davis County was represented by a Salt Lake City firm, and (3) the number of hours for which Davis County seeks compensation is excessive.[2] We agree with EPA in large part and remand to the agency for renewed negotiations based on the principles and guidance set forth herein.

## I. DISCUSSION

### A. *Expert Witness*

■ The Clean Air Act litigation costs provision explicitly includes expert witness fees. On this basis, Davis County seeks

---

1. We note that Davis County erred in adding its own section-by-section subtotals in computing the attorney fees portion of this figure and that its own numbers actually add up to $310,074.71.

2. EPA does not object to the $9,724.48 in costs claimed by Davis County, covering such expenses as Westlaw, copying, and delivery charges. In light of our decision that Davis County is not

entitled to fees based on District of Columbia rates, *see infra* section I(B), we expect that in further negotiations on remand Davis County will seek additional costs for travel that it omitted from the motion under review. Davis County has stated its intent to do so should we reject an award based on Washington rates, and we believe such costs an appropriate subject for negotiation.

reimbursement of $79,130.48 charged by Dr. Rigo.[3] Petitioner claims that Rigo is properly considered an "expert witness" because he analyzed the regulations and the docket and provided two technical affidavits about the impact the regulations would have on Davis County. The affidavits, which are largely identical, were submitted as support to this court with the motions to expedite review and to stay the effective date of the new standards. EPA objects to this amount in its entirety, arguing that Rigo was a technical consultant hired by Davis County to help its attorneys "deal[ ] with the technical nature of the subject matter," not to appear as an expert witness. EPA relies on *Sierra Club v. EPA,* 769 F.2d 796, 812 (D.C.Cir.1985), where this court held that the Clean Air Act's litigation costs provision did not cover a $1,616 claim for "a 'technical consultant' who aided the petitioners in preparing their case": "We do not read section 307(f)'s waiver of sovereign immunity so broadly as to allow for fees in connection with the services of outside, nontestifying experts." The court implied that had expert testimony been provided to the court instead of review being based entirely on the administrative record, recovery might have been appropriate. This suggests that expert testimony need not be given in a trial to fall within 42 U.S.C. § 7607(f).

To the extent that Rigo's charges reflect time necessary for the preparation of his affidavits, they are properly recoverable. In its motions to expedite and for a stay Davis County sought to demonstrate to the court the practical effect of the new regulations, a technical matter more suited for an expert engineer than a lawyer. It is unclear from the itemized billing included with Rigo's affidavit on the fee issue precisely how much time is directly attributable to the two earlier affidavits, but our perusal suggests it may not amount to more than 16 hours of his own time and 18.5 hours of staff time, totaling $3,481.01.[4] The rest of his time seems to be related to analyzing the material in the rule-

making docket and helping Davis County's attorneys brief the case, prepare for oral argument, and prepare for a settlement meeting with EPA. Indeed, the affidavit submitted by Rigo on the fees issue states that "I and my professional staff have performed various analyses and other background work for the briefing as requested by [Davis County's] lawyers." This advisory function appears to fall within the prohibition of *Sierra Club.*

Davis County argues in the alternative that it should at least be compensated for Rigo's fees through the filing of the motion for a stay ($45,370.77). There is no indication, however, that all of his work up to that point is properly allocated to preparation of the affidavits, as opposed to general consulting on the case. Some of his work at this stage was probably necessary for Rigo to arrive at the conclusions explained in his affidavits, but on this record, there is no reason to believe all of this time was so utilized.

### B. *Appropriate Hourly Rates*

■ Davis County also seeks $221,219.75 in attorney fees. Attorney fees are explicitly permitted by section 7607(f), but the statute does not specify the location in which the hourly rate will be computed, *i.e.,* the situs of the law firm or the situs of the legal proceedings. Davis County's lodestar calculation is based on District of Columbia rates (discounted by $5–$60/hour "to account for ... inefficiencies") although the case was handled by a Salt Lake City firm. EPA states that Davis County's settlement offers on the fees issue were based on its normal billing rates; Davis County states that its offers reflected "significant discounts" from D.C. rates. EPA acknowledges that Davis County is entitled to attorney fees, but argues that D.C.'s rates—which appear to be approximately 70% higher—are not the correct ones.

In defending its use of D.C. rates, Davis County cites several cases for the proposition

---

3. This is the figure listed in petitioner's initial brief and Dr. Rigo's affidavit. The figure in the reply brief is eight cents lower.

4. These numbers reflect charges where the "description of services rendered" plainly indicates

work on the affidavits. Because some entries (such as the one for staff member K.A. Sherwood on December 7, 1995) give several descriptions but only one figure for hours, even these numbers could be too high.

that the location of the court deciding the case is normally the relevant market. The sole D.C. Circuit case cited, *Donnell v. United States,* 682 F.2d 240, 251–52 (D.C.Cir. 1982), awarded D.C. rates to Mississippi lawyers who handled a voting rights case, including trial, in this circuit, even though much of the preparation work was performed in Mississippi. Assuming the normal rule is that the rate is based on the forum of the litigation, not the business location of the lawyers, we recognized that the rule has an exception—when an out-of-town attorney is used because of special expertise or the unwillingness of local counsel to take the case, out-of-town rates apply; as long as local attorneys are available and competent to handle the case, however, local rates should prevail. *See id.; National Wildlife Fed'n v. Hanson,* 859 F.2d 313, 317–18 (4th Cir.1988); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 226, 232 (2d Cir.1987). Based on this exception, the *Donnell* court made the fee calculation for one attorney on (lower) Mississippi rates because he was retained due to his expertise on a particular county in Mississippi.

EPA would distinguish *Donnell* and other cases cited by Davis County as involving situations where "a substantial part of the attorneys' work took place, as was the case in *Donnell* where a trial was conducted, in the venue where the prevailing market rate was applied." This distinction, however, is certainly not made explicit in *Donnell.* In *Donnell,* the court did not distinguish between work performed in-town and out-of-town while discussing the question of the appropriate rate. It observed that, "[a]lthough there may be cases, such as this one, where much of the work must be performed away from the district court's community, we do not believe that this alone provides a sufficient reason for deviating from the general rule." *Donnell,* 682 F.2d at 252. Thus, the court awarded D.C. rates for one attorney whose only involvement was preparing the fee application, a task she performed in her Mississippi office. Nor do the other cases cited by Davis County appear to turn on where any particular portion of the work was performed

or whether a trial or appellate court was involved.

■ Were we to adhere strictly to *Donnell,* D.C. rates would be the appropriate ones to use in calculating Davis County's attorney fees award as this case was before a D.C. court and could have been handled by D.C. attorneys. For reasons we now explain, however, we decline to follow *Donnell* to the extent it dictates this result, and hold instead that Davis County's fee award should be based on Salt Lake City rates. Although the forum rate rule has been widely adopted, we have found few cases applying the rule in situations like the one we face, where out-of-jurisdiction lawyers would receive substantially higher rates than they ordinarily command for work done almost exclusively in their home territory. *But see Garmong v. Montgomery County,* 668 F.Supp. 1000, 1007 (S.D.Tex.1987); Mary Frances Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 16.03[8], at 16–103 (1997) ("[T]he rule is equally applicable where counsel's customary rates are lower. In that event, out-of-town counsel can recover the higher forum rate."). The combination of these two factors along with intervening decisions by the Supreme Court impels us to create a second exception to *Donnell* for cases where the bulk of the work is done outside the jurisdiction of the court *and* where there is a *very significant* difference in compensation favoring D.C. This exception would not alter the fee award in most instances as most cities' rates are on a par with our own, *see* National Survey Ctr., *Partner, Associate & Legal Assistant Billing Rate Survey for Law Firms, National Edition* 3–4 (1998), but it would prevent the occasional erratic result where the successful petitioner is vastly overcompensated given the amount he contracted to pay for legal services. In all other cases the D.C. forum rates would apply.

*Donnell* offered two rationales for the forum rate rule. First, administrative ease: "It requires the district court normally to determine only the prevailing market rate within its jurisdiction, an inquiry about which it should develop expertise." *Donnell,* 682 F.2d at 251. Second:

[I]t is a neutral rule which will not work to any clear advantage for either those seeking attorneys' fees or those paying them. High-priced attorneys coming into a jurisdiction in which market rates are lower will have to accept those lower rates for litigation performed there. Similarly, some attorneys may receive fees based on rates higher than they normally command if those higher rates are the norm for the jurisdiction in which the suit was litigated.

*Id.* at 251–52. A Third Circuit task force offered similar reasons for preferring the forum rate rule:

> The Task Force acknowledges that standardized rates applicable to all types of cases, even when broken into categories, will undercompensate certain attorneys and overcompensate others. Nonetheless, it concludes that the objectivity and efficiency that would be achieved by using uniform rates is preferable to the current system.

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force,* 108 F.R.D. 237, 261 (1985) (footnote omitted). We consider these reasons sufficient to justify awarding fees based on rates charged in the District of Columbia to all lawyers except those few who practice in far less expensive legal markets and perform the bulk of their work on the case at home in those markets. *Cf. Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (reasonable attorney fee award may be higher than fee called for by contract between prevailing client and attorney).

Because we have simplified the process for calculating reasonable attorney fee awards since *Donnell* was decided, the administrative ease rationale it relied on carries less weight today. In 1982, the twelve-factor inquiry put forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), and adopted by us in *Evans v. Sheraton Park Hotel,* 503

F.2d 177, 187–88 (D.C.Cir.1974), was still central to the lodestar approach. *See Jordan v. United States Dep't of Justice,* 691 F.2d 514, 518 & n. 28 (D.C.Cir.1982). The lodestar approach has become significantly simpler since then, *see Pennsylvania v. Delaware Valley Citizens' Council for Clear Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), reducing the likelihood that lack of knowledge of a litigator's home community will hinder a court shaping a fee award.[5] Nonetheless there is reason to continue using the D.C. rates when they are not significantly higher than out-of-town rates or when most of the work is in fact performed here.

We think the neutrality rationale in *Donnell* is still sufficient to justify forum rates in all but the extreme situation we face here. We will presume that Washington rates will apply so long as the judicial forum is here, unless the work done here is minimal and the difference in rates substantial. Like basing awards on the situs of the work performed, the use of Washington rates is neutral in that it does not afford an automatic advantage to either prevailing or losing parties.

While both approaches can thus be termed neutral, we find the use of home market rates is preferable when the home market is substantially less costly and the site of the bulk of the legal work because it produces a result that better reflects the purpose of fee shifting statutes. "[T]he aim of such statutes [i]s to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws." *Delaware Valley,* 478 U.S. at 565, 106 S.Ct. 3088. Parties should be just as able to obtain such help when fees are based on the jurisdiction in which the clients and the lawyers reside and practice as if those fees are based solely on the judicial forum. While limiting lawyers to less than their usual rates would present problems for private parties seeking help, limiting lawyers

---

5. Difficulty in applying the twelve factors to out-of-town lawyers is not explicitly mentioned in *Donnell.* Because the factors were so much a part of the fee award landscape at the time,

though, we believe the court must have had this difficulty in mind when it extolled the simplicity of using the forum rate.

to what they normally receive in their home market should not. Conversely, while awarding higher Washington rates would not make it harder for parties to find counsel, it would produce windfalls inconsistent with congressional intent. *See id.* ("[t]hese statutes were not designed as a form of economic relief to improve the financial lot of attorneys"); *City of Riverside v. Rivera*, 477 U.S. 561, 580, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality) (Congress did not intend statutory fee awards to produce windfalls).

Our decision today is confined to the situation before us and effects a limited exception to *Donnell*. In this case, as far as we can tell from the record, virtually all of the work was performed in Utah, the less expensive legal market. The only time spent in Washington by Davis County's lawyers, as far as the record reflects, was for the purpose of examining the administrative docket and participating in a short oral argument. In a case where out-of-town lawyers must spend much more time in Washington—for example, when a lengthy trial is held—a different analysis favoring an award of D.C. rates is appropriate.

Nor do we suggest that the *Donnell* rule should no longer be applied when lawyers from a more expensive market litigate here. In fact, consideration of the purpose of fee shifting statutes suggests preserving the *Donnell* rule and not adopting a home market rate presumption on such facts. As long as there are lawyers here who are competent to handle a case, the party seeking legal assistance will be able to find it even if the potential fee award is limited to D.C. rates instead of higher home market rates. On the other hand, when a party deliberately chooses pricier out-of-town lawyers who will be undercompensated relative to their normal rates, the principal purpose of the fee shifting laws, *i.e.*, to assure adequate counsel,

will not be impugned. The exception to the *Donnell* rule allowing home market rates for attorneys from a more expensive jurisdiction when lawyers in Washington are not available or competent to handle the case remains in place. This exception reflects a proper concern with protecting the ability of a private party to attract a lawyer.

## C. *Number of Hours Devoted to the Case*

EPA also contends that Davis County is seeking recovery for a substantially excessive number of hours. EPA notes that the other petitioners received only $58,000 (Waste Energy Partners ("WEP")) [6] and $61,749 (Cement Kiln Recycling Coalition) [7] in fees and costs, and argues that Davis County's attorneys could not reasonably have been required to work so many more hours on the same appeal as to justify this much greater award.

Arguing that the awards to the other petitioners should not serve as a reference for its request, Davis County notes that the motions to expedite and for a stay were prepared by its attorneys alone, and that these motions required extensive work. Davis County also states that it briefed and argued one of the principal issues (whether the EPA's rule was arbitrary and capricious) alone and that this issue consumed 60% of its billing hours.[8] Davis County also asserts that it has voluntarily reduced its billable hours by at least 10%.

It is difficult for us to determine on the record before us precisely how much time Davis County is claiming for each litigation-related task. Although its time is broken down into subsections, the subsections themselves include several different tasks. The breakdown is as follows:

---

**6.** This was a settlement after a request for $64,362.

**7.** The court determined this amount after a request for $77,187.

**8.** The court did not reach the arbitrary and capricious challenge, deciding the case on *Chevron*

step one. Given Davis County's success in the case, however, the time its attorneys spent on alternative grounds should not be used to reduce its award. *See Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Goos v. National Ass'n of Realtors*, 68

| Fee[9] | Hours[10] | Task |
|---|---|---|
| $26,620 | 133.25 | prefiling research, preparation, and evaluation of case, and preparation of petition for review |
| $14,610 | 69.75 | preparation of court docketing materials, and research and preparation of motion to expedite and application for stay |
| $14,430 | 66.50 | research for briefs and motions; reply on motion to expedite; deal with appendix, consolidation and briefing issues; general case management |
| $44,710 | 232.50 | drafting of opening brief; motion to stay; general case management |
| $9,211.50 | 44.90 | deal with stay issues; research and respond to motion for voluntary remand; errata for opening brief |
| $21,682.50 | 109.75 | appendix and reply brief |
| $38,965 | 159.00 | preparation for oral argument and oral argument; settlement discussion |
| $50,990.75 | 272.20 | post argument work |

Many of the itemized descriptions (such as "telephone conference with Bill Evans") within the subsections are too vague to identify with any particular task.

■ We do conclude, however, that the total number of hours claimed by Davis County seems unreasonably high. Davis County lists around 160 or 170 hours consumed in preparation for oral argument and the argument itself (the itemization makes an exact determination difficult). In *American Petroleum Inst. v. United States EPA*, 72 F.3d 907, 917 (D.C.Cir.1996), the court found unreasonable a fee petition seeking recovery for 116.25 hours spent by a partner on oral argument and reduced the figure to 80, allowing 10 hours billed by another lawyer and a paralegal to stand. WEP listed 23.65 hours on oral argument (Davis County and WEP split the argument).

Three entries from late September, 1997, are duplicated. In response to EPA's observation about duplicated entries, Davis County deleted several from January, 1997, but neither party noticed the September entries.

■ EPA objects to time spent by a senior attorney at $265/hour on basic research. For example, on 2/15/96, the attorney is listed for 4.5 hours for "research regarding court obligation to defer to agency construction when statutory language is plain." Billable hours in fee applications are susceptible to reduc-

tion for failure to allocate tasks efficiently to different attorneys based on experience. *See Sierra Club*, 769 F.2d at 807–08. Beyond the particular examples cited by EPA, it seems to us the hours devoted to research throughout the itemization are allocated to relatively senior attorneys more frequently than seems justifiable.

Duplication of effort is another basis on which Davis County's hours seem excessive. *See Environmental Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C.Cir.1993). Davis County seeks recovery for the time of ten different attorneys (or nine and one law clerk). Although this alone may not be a reason to eliminate hours, *see Donnell*, 682 F.2d at 250 n. 27, it appears to have resulted in multiple attorneys performing the same tasks. For example, two attorneys are listed at different points as drafting the attorney fees application, while a third had been listed months earlier for "work on fee application." Similarly, there appears to have been an unusually high number of attorneys reviewing and editing briefs.

■ Hours may also be rejected when work descriptions are so general that a court cannot ascertain the reasonableness of the time claimed. *See American Petroleum Inst.*, 72 F.3d at 915, 917. Davis County's fee petition is illustrative of this problem in many places.

F.3d 1380, 1385 (D.C.Cir.1995), *clarified on denial of reh'g*, 74 F.3d 300 (D.C.Cir.1996).

**9.** These fee subtotals are based on Washington rates that we have already concluded are too high.

**10.** Davis County did not total the number of hours spent on each subsection. These figures are based on our own review of the record.

On the other hand, we are not persuaded by EPA's suggestion that the number of billable hours listed by Davis County on the fees issue is excessive simply by virtue of that number. As EPA notes, it is hard to tell just how much time Davis County is listing for recovery of fees, but by our calculation it appears to be at least 125 hours. Because the itemization is often vague, the number might be substantially higher.[11] EPA cites *American Petroleum Inst.*, 72 F.3d at 918, which reduced the award for time spent on a fee petition to 30 partner and 60 associate hours. The 90 hours in *American Petroleum Inst.* only covered the fee petition, however, whereas the billable hours listed by Davis County also cover negotiations over the fee. Still, Waste Energy Partners requested only 98 hours for all post-argument work and the section of Davis County's billable hours itemization suffers from some of the other defects we have already identified.

Based on these considerations and with the goal of providing guidance to the parties on remand, we list the following amounts as falling within a reasonable range for the categories of work listed. The reductions are meant not as the final word on what Davis County can seek or EPA can agree to, but rather as what we might have expected in an appeal of this kind compared to others similar both in complexity and end product. The Utah rates we use are based on those used by Davis County in its 1997 fee proposal to the government, as evidenced by an attachment to EPA's brief. Because the record is not sufficiently clear for us to conclude that these are the proper rates, the parties may also need to address this subject on remand.

| Fee Request | Reduced to @ D.C. rates | Reduced to @ Utah rates | #Hours Requested | #Hours reduced to | Category |
|---|---|---|---|---|---|
| $26,620 | 11,060 | $6,398.75 | 133.25 | 56.75 | prefiling research, preparation, and evaluation of case, and preparation of petition for review |
| $14,610 | $7,215.50 | $3,875 | 69.75 | 33.50 | preparation of court docketing materials, and research and preparation of motion to expedite and application for stay |
| $14,430 | $7,075 | $4,440 | 66.50 | 34.50 | research for briefs and motions; reply on motion to expedite; deal with appendix, consolidation and briefing issues; general case management |
| $44,710 | $27,677.50 | $16,819 | 232.50 | 142.70 | drafting of opening brief; motion to stay; general case management |
| $9,211.50 | $4,594 | $2,827 | 44.90 | 21.15 | deal with stay issues; research and respond to motion for voluntary remand; errata for opening brief |
| $21,682.50 | $12,970 | $7,765 | 109.75 | 66.25 | appendix and reply brief |
| $38,965 | $12,627.50 | $7,062.25 | 159.00 | 49.00 | preparation for oral argument and oral argument; settlement discussion |
| $50,990.75 | $31,645.50 | $17,418.25 | 272.20 | 160.10 | post argument work |
| $221,219.75[12] | $114,865 | $66,605.25 | 1,087.85 | 563.95 | |

## II. CONCLUSION

The petition is remanded to EPA for the parties to renew negotiations in accordance with the principles and guidance set out in this opinion.

*So ordered.*

---

**11.** In its reply, Davis County claims it spent only 99 hours on all aspects of recovering fees. The substantial difference may reflect the imprecision in Davis County's itemization.

**12.** Davis County incorrectly totaled these numbers to $225,219.75.