# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 13-643V
### (to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                        *       Special Master Corcoran
                                        *
BARRY S. DEZERN,                        *
                                        *       Filed: August 18, 2016
              Petitioner,               *
                                        *
                                        *       Attorney's Fees and Costs;
       v.                               *       Influenza ("Flu") Vaccine;
                                        *       Guillain–Barré Syndrome ("GBS"); Chronic
SECRETARY OF HEALTH                     *       Demyelinating Polyneuropathy ("CIDP")
AND HUMAN SERVICES,                     *
                                        *
              Respondent.               *
                                        *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Franklin J. Caldwell, Jr.*, Maglio, Christopher & Toale, Sarasota, FL, for Petitioner.

*Claudia B. Gangi*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On September 4, 2013, Barry S. Dezern filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program"),[2] based upon allegations that he developed Guillain–Barré syndrome ("GBS") and/or Chronic Demyelinating Polyneuropathy ("CIDP") as a result of his November 22, 2010, receipt of the influenza ("flu") vaccine. The parties stipulated to damages, and I issued a decision awarding them on January 21, 2016 (ECF No. 43).

On June 16, 2016, Petitioner filed a Motion requesting an award of attorney's fees and costs in the total amount of $53,982.95. ECF No. 48. Respondent does not oppose the request in substance, but does suggest that the total amount sought is too high, leaving determination of a proper sum to be

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)).

awarded to my discretion. For the reasons stated below, and after review of the parties' submissions and relevant decisions of other special masters, I hereby award the total sum of **$48,523.55** in attorney's fees and costs.

## FACTUAL BACKGROUND

As noted above, Mr. Dezern alleged that he developed GBS or CIDP after receipt of the flu vaccine in November 2010. The primary attorney to have worked on the case is John Caldwell of the Sarasota, Florida, office of the law firm of Maglio, Christopher & Toale (the "Maglio Firm")[3], and the billing invoices filed in connection with the present fee request reveal the work he performed on the matter. *See generally* Ex. 33 (billing invoices), filed as ECF No. 48-1, at 1-16.

The Maglio Firm began work on the case in August 2011 – two years prior to its filing. But throughout that time period, the vast majority of work was performed by paralegals rather than Mr. Caldwell, and was focused on gathering documents relevant to the claim. Mr. Caldwell did not work on the matter until March 2012, and for the entirety of that year performed less than three hours of work in total (although he worked on the matter substantially more in the months before its filing). There is accordingly little evidence from the billing records that the Maglio Firm attorneys were overworking the case prior to its initiation – although the same records also suggest counsel had more than enough time to prepare the matter.

Reflecting the fact that the Maglio Firm had ample time to gather documents in advance of filing, Mr. Dezern was able to file a statement of completion by November 2013 (ECF No. 9), two months after the petition was filed. Respondent, however, requested suspension of the Rule 4(c) Report in January 2014 (ECF No. 12), because records vital to her review of the matter remained unfiled. Additional months thereafter passed before another statement of completion was filed on May 9, 2014 (ECF No. 21), followed by the delayed Rule 4(c) Report on June 19, 2014 (ECF No. 22).

The next phase of the case involved expert discovery. Mr. Dezern filed a report from Lawrence Steinman, M.D., on October 1, 2014 (ECF No. 26), and then Respondent filed an expert report of her own on February 13, 2015 (ECF No. 32), after requesting two extensions of time to do so. In response (and prompted by my own statements concerning questions with Petitioner's diagnosis), Petitioner obtained a supplemental expert report from Dr. Steinman, filing it on May 28, 2015 (ECF No. 36). The parties thereafter embarked upon settlement negotiations, and by October of that year requested that I issue a "15-Week Order" to permit Respondent the opportunity to obtain formal approval for settlement of the case. I did so on October 2, 2015 (ECF No. 39), and then the parties filed their

---

[3] The billing invoices reveal that one other attorney, identified as "AMM" (most likely Altom Maglio) performed .2 hours of work on the case in September 2011, but did nothing thereafter. Ex. 33, filed as ECF No. 48-1, at 1.

settlement stipulation on January 21, 2016 (ECF No. 42).

Petitioner filed his fees and costs request in June, seeking an award of attorney's fees, paralegal costs, litigation costs, and expert costs. With respect to the first category, Mr. Caldwell (the attorney primarily responsible for the matter) billed his time at a rate of $300 per hour from 2012 until 2016, when his rate was raised to $356 per hour. *See* Ex. 33 (billing invoices), filed as ECF No. 48-1, at 1-16. A declaration attached to the fees request from the Maglio Firm's managing partner, Altom Magio, Esq. (Ex. 35, filed as ECF No. 48-3) explains that the Maglio Firm raised all of its billing rates for Vaccine Program work beginning in January 2016, in response to a 2015 decision regarding proper rates for "in forum" practitioners, *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Ex. 35 at 2. Petitioner asks for a total award of $36,850.40 in attorney's fees.

Paralegal time was billed at a variety of levels, depending upon the year in question or the paralegal's level of expertise. Thus, in 2011, the base paralegal rate charged to the matter was $105 per hour, with "certified"[4] paralegals charging at $135 per hour. Ex. 33 at 1-2. In 2012, paralegal base rates were lowered to $95 per hour, while certified paralegals plus an additional category – "registered"[5] paralegals – were billed at the same higher $135 hourly rate. *Id.* at 2-3. From March 2013 until the case's end, the top paralegal billing rate remained $135 per hour, although the base rate for certain work performed in 2015 was billed at $105 per hour.[6] The total sum requested for paralegal time devoted to the matter is $5,654.50.

Petitioners also request reimbursement of costs. The largest cost component is work performed on the case by Dr. Steinman, for which Mr. Dezern requests $8,375.00. Ex. 33 at 18. Petitioner has not, however, provided any of Dr. Steinman's actual invoices. The remainder of the $11,478.05 in total costs requested reflect the filing fee, travel-related expenses, and the cost of obtaining and copying medical records.

On June 30, 2016, Respondent filed a document reacting to Petitioner's Motion. ECF No. 49. Respondent asserts that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for Respondent in the resolution of a request by a Petitioner for an award of attorney's fees and costs." *Id*. at 1. Respondent added that she "is satisfied the statutory requirements for an award of attorneys'

---

[4] The appellation "certified" paralegal, according to Petitioner's counsel, denotes a level of expertise and qualifications based on standards set by the National Association of Legal Assistants. Ex. 35 at 2.

[5] Mr. Maglio's declaration explains that the registered designation denotes paralegals meeting certain Florida Bar criteria. Ex. 35 at 3.

[6] A very small portion of time devoted to the matter by a Maglio Firm paralegal in 2016 (.1 hours on March 15, 2016) was billed at the rate of $145 per hour. Ex. 33 at 16. This appears to be the rate the Maglio Firm charges for paralegal services performed by staff in its Washington, D.C. office. Ex. 35 at 3.

fees and costs are met in this case." *Id*. at 2. However, she maintained that a reasonable amount for fees and costs in the present case would fall between $24,000.00 and $38,000.00, providing no substantiation for this proposed range. *Id*. at 3. Petitioner did not file a reply.

**ANALYSIS**

**I.      Legal Standards for Fees Requests**

Vaccine Program petitioners who receive compensation for their injuries are by statute entitled to an award of attorney's fees and costs. However, such fees and costs must be "reasonable." 42 U.S.C. § 300aa-15(e)(1). It is for the special master to evaluate and decide whether this is the case. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters have discretion in determining what a reasonable fees award is, and may reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

The special master is not obligated to evaluate a fees petition on a line-by-line basis. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only 58 percent of the numbers of hours for which compensation was sought). Rather (as the United States Supreme Court instructs) when awarding attorney's fees special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011).

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348. This standard for calculating a fee award is considered applicable in most cases where a fees award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. den'd*, 91

4

Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates. *Avera*, 515 F.3d at 1348. This is the *Davis* exception to the forum rule, which applies if the bulk of the attorney's work was performed outside of Washington, DC, in a location where prevailing rates are substantially lower than the forum rate. *Avera*, 515 F.3d at 1349, (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

Evaluating an attorney's fees application involves more than the mere performance of a mathematical calculation. In all stages of the lodestar calculation, I must determine if the fees applicant has established the reasonableness of the billing rate and work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero").[7]

Petitioners bear the same reasonableness burden in seeking an award of costs. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). When petitioners fail to carry this burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). This practice is consistent with how the Federal Circuit and the Court of Federal Claims (the courts responsible for reviewing the decisions of special masters) have interpreted other federal fee-shifting statutes. *See Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987) (interpreting the Equal Access to Justice Act); *Presault*, 52 Fed. Cl. at 679 (interpreting the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970).

## II.     Petitioner's Attorney's Fees Request

### A.     Applicable Rates

Petitioner requests that Mr. Caldwell receive $300 per hour for most of the work performed in the matter, with an increase to $356 per hour for 2016 work. Other decisions have previously

---

[7] Although *Mares* did not interpret the Vaccine Act's fees provisions, other fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

determined that the Maglio Firm attorneys practicing out of its Sarasota office, such as Mr. Caldwell, are not entitled to a forum rate, because the local rate is sufficiently lower than the forum rate to trigger the *Davis* exception. *See, e.g., O'Neill v. Sec'y of Health & Human Servs.,* No. 08-243V, 2015 WL 2399211, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 29, 2015) (citations omitted); *see also Scharfenberger v. Sec'y of Health & Human Servs.,* No. 11-221V, 2015 WL 3526559, at *8-10 (Fed. Cl. Spec. Mstr. May 15, 2015), *mot. for review den'd*, 124 Fed. Cl. 225 (2015) (discussing forum rate payable to Maglio Firm attorney working in D.C. office). I embrace the logic of these prior holdings, and apply them herein in determining the proper rate to be paid for Mr. Caldwell's time.

Petitioner seeks reimbursement of attorney time calculated at the same rate for all but one of the years relevant to the case (2012 – 2015): $300 per hour. Other special masters have awarded rates in that range for work performed in the same general time period. *See, e.g., Ferguson v. Sec'y of Health & Human Servs.*, No. 14-975V, 2016 WL 4140949, at *2 (Fed. Cl. Spec. Mstr. July 11, 2016) (awarding $300 per hour for Sarasota attorneys from the Maglio Firm for work performed 2013-15); *O'Neill,* 2015 WL 2399211, at *5 (awarding $300 per hour to Maglio Firm attorneys from the Sarasota office, including Mr. Caldwell, for work performed 2011-13); *Gruber v. Sec'y of Health & Human Servs.,* No. 00-749V, 2009 WL 2135739, at *3 (Fed. Cl. Spec. Mstr. June 24, 2009) (awarding $275 per hour for Maglio Firm attorney Anne Toale, Esq., an attorney with experience comparable to that of Mr. Caldwell, performing work between 2008 and 2010), *vacated on other grounds,* 91 Fed. Cl. 773 (2010). I will apply this rate to work performed from 2012 to the end of 2015.

The $356 hourly rate requested for work performed in 2016, however, presents a problem. Petitioner acknowledges that *McCulloch* inspired the Maglio Firm's decision to increase its billing rates. Ex. 35 at 2. That decision discussed hourly rate ranges for attorneys of different levels of experience. *McCulloch*, 2015 WL 5634323, at *19. I have previously noted that *McCulloch* is well-reasoned, and have therefore made use of it in determining attorney's fees rates for other counsel. *See, e.g., Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *11 n.16 (Fed. Cl. Spec. Mstr. Sept. 30, 2015) (Arizona-based attorney entitled to forum rate).

Nevertheless, *McCulloch* involved calculating forum rates - not *Davis* exception rates for attorneys in non-forum locales such as Sarasota[8] - and so the ranges it proposes cannot be applied herein (although the experience brackets it creates have utility). *McCulloch* was decided several months after *O'Neill*, but because it only addressed the proper calculation of forum rates, it does not stand for the proposition that the Maglio Firm attorneys are now entitled to forum rates. And in any event, Petitioner herein (while he asks for a higher rate for 2016 work) has not set forth or briefed the

---

[8] *Compare McCulloch*, 2015 WL 5634323, at *19 (setting forth reasonable hourly rates based on attorney experience level where the forum rate is applicable), *with Davis*, 169 F.3d at 758 (explaining the exception that the forum rate will not apply when the majority of the work is done outside the forum and there is a very significant difference in compensation favoring DC). *See also McCulloch*, 2015 WL 5634323, at *16 (explaining that the *McCulloch* forum rate table does not include cases in which a Washington, DC, forum rate was requested and denied based on a substantial difference in rates for the local area).

argument that the Sarasota-based attorneys should receive a forum rate.

Accordingly, I find the $356 per hour rate request too high – although I find it reasonable to make some upward adjustment – to reflect changes in the way Vaccine Program firms have charged for their services (since *McCulloch* was decided) based on attorney experience. Adjusted for inflation, the $300 rate in 2012 would amount to only $314.95 in 2016. CPI Inflation Calculator, U.S. Bureau of Labor Statistics, http://data.bls.gov/cgi-bin/cpicalc.pl (last accessed August 11, 2016) ("CPI Calculator").[9] In the exercise of my discretion, and in order to achieve the "rough justice" that the Supreme Court suggests is appropriate in determining fees awards, I will award fees for 2016 work in this case calculated at the hourly rate of $335 - the approximate midpoint between Petitioner's request and the CPI calculation.

### B. Hours Devoted to Matter

As noted above, special masters are not obligated to scrutinize each entry on a billing record in search of inefficiency. Nor has Respondent identified any objectionable billing instance or category for me. I otherwise do not find that the matter was overworked. Even though the petition presented issues (the causal relationship between the flu vaccine and the development of peripheral neuropathies) that are commonly resolved without hearing in the Vaccine Program, the procedural history reveals that Petitioner was required to substantiate his case to Respondent's satisfaction before settlement was possible (and to that end had to file both an initial and supplemental expert report).

Such circumstances justify an award of the majority of time billed, with the following exceptions:

   a.    On August 27 and 29, 2013, Mr. Caldwell billed a total of 6.4 hours to reviewing of medical records as well as drafting of the actual petition – in this case, a three-page document (with the bulk of the third page consisting of the Maglio Firm signature block). Ex. 33 at 4-5. This is an unacceptable amount of time to have billed to a matter that paralegals largely managed for the two years prior to its filing, and whose complexity was not reflected in the petition itself. I therefore will reduce this amount by four hours, awarding **2.4** hours of time for these tasks;

---

[9] The sum is admittedly greater if I apply the 3.7 percent adjustments used in *McCulloch* to determine the reasonable fee rate. *McCulloch*, 2015 WL 5634323, at *16 (applying a 3.7 percent adjustment to hourly attorney rates to reflect the approximate rate of growth in attorneys' fees). While determining rate changes based on that adjustment formula is reasonable, it is also reasonable to use the CPI, especially since backwards adjustments are often required in Vaccine Program cases (to set a rate for work performed in prior years), and the 3.7 rate would penalize counsel in the same way Respondent has objected not applying the CPI would penalize it. *See Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for review den'd*, 2011 WL 6292218 (Fed. Cl. Nov. 22, 2011) (explaining that a current year's rate cannot be retroactively applied to previous years' work, as it would equate to charging the government interest).

b.      On July 1, 2013, the billing invoices reflect 5.9 hours of time spent in travel to Henderson, North Carolina for a meeting with Petitioner – on top of 5.6 hours of time billed that same day to preparing for, then attending the meeting. Ex. 33 at 4-5. It is common practice in Program proceedings to compensate hours spent traveling at one-half of the normal hourly attorney rate, but the fact that an attorney is traveling is not dispositive of how to treat such attorney time. *See, e.g., King v. Sec'y of Health & Human Servs.*, No. 03–584V, 2009 WL 2524564, at *4 (Fed. Cl. Spec. Mstr. July 27, 2009); *Kuttner v. Sec'y of Health & Human Servs.*, No. 06–195V, 2009 WL 256447, at *10 (Fed. Cl. Spec. Mstr. Jan. 16, 2009). In some situations, an award of full attorney's fees for travel is appropriate if sufficient documentation exists specifying the work performed while traveling. *Gruber*, 91 Fed. Cl. at 791. Here, the billing invoices list two entries related to the same meeting with Petitioner. The time entry for attorney travel time is generic and unspecific. Because there is insufficient documentation of the work done while traveling, I must infer that the time entry devoted to traveling is overbilled and reduce it by one-half. I will therefore award only **2.95** of the 5.9 hours billed for travel time; and

c.      On September 26-27, 2014, Mr. Caldwell billed 10.4 hours to collaborating with Dr. Steinman in the preparation of his expert report, plus an additional 6.8 hours on September 30th. Attorneys may reasonably assist their experts in preparing their reports and offering supervision if a reasonable attorney would do so in similar circumstances. *Gruber*, 91 Fed. Cl. at 792. However, experts are expected to prepare their own report, and the attorney should not ghost-write it in their place or direct its preparation. *Id.* at 795 (noting that at a certain point, an attorney's involvement or direction of the opinion becomes improper). The amount of time devoted here smacks of unnecessary attorney involvement. It is also excessive in light of what Dr. Steinman commonly charges for his services based on my experience (upwards of $500 per hour). I will therefore reduce this amount by one-half, awarding only **8.6** hours of time for these entries related to preparation of Dr. Steinman's initial expert report.[10]

C.      Fees Award Summary

Based upon all of the above, I award the following attorney's fees:

2012-2015: 103.25 hours x $300 = $30,975.00.

2016: 3.4 hours x $335 = $1,139.00.

---

[10] Counsel billed over 7 hours to the preparation of Dr. Steinman's supplemental report in May 2015 (Ex. 33 at 12), but I am not similarly reducing these hours – both because they are substantially less that what was devoted to the initial report, and because attorney assistance with a follow-up report is more reasonable. By the time a supplemental report is requested, a Program attorney will have a better sense of what is required to meet the relevant legal standards than the expert, making it foreseeable that the attorney may reasonably need to review the draft supplemental report more carefully.

**Total: $32,114.00.**

## III.    Litigation Costs

Petitioner requests three categories of costs. First, he asks for an award of $5,654.50 in paralegal costs, billed at a variety of rates during the case's pendency. Ex. 33 at 1-16. I find no particular paralegal time entries objectionable, nor did Respondent identify any. Indeed, in a case like the present, where a petitioner made some efforts to prepare the matter before filing, paralegal efforts at obtaining and organizing the relevant record were valuable.[11] I will therefore award all paralegal hours requested.

However, the various rates requested for experienced paralegals approach forum rates. *See McCulloch*, 2015 WL 5634323, at *21 (forum rate of $135 an hour for paralegal work). Indeed, only a year ago, I awarded paralegal costs in a matter involving the Maglio Firm at the top rate of $125 per hour for those paralegals that were deemed "certified" or "registered" – and that was a matter litigated by one its D.C.-based attorneys. *Scharfenberger*, 2015 WL 3526559, at *10-11; *but see O'Neill,* 2015 WL 2399211, at *14-15 (awarding $135 per hour for Maglio Firm paralegals performing work in Florida). And although Respondent offers no targeted challenge to the rates requested, Petitioner for his part has not defended or justified the requested rates either.

Given the above, and consistent with my prior holdings, I will award $125 per hour for paralegal services provided by registered and certified paralegals, and then $105 and $95 per hour for all other paralegal time billed to the matter, in accordance with the billing invoices submitted in this case. This results in the following calculations:

$95 x 1.8 hrs = $171.00;

$105 x 7.6 hrs = $798.00; and

$125 x 34.7 hrs = $4,337.50.

**Total paralegal costs - $5,306.50.**

Petitioner next asks for $8,375.00 for his expert, Dr. Steinman, who prepared two expert

---

[11] It is regrettable that despite all of the paralegal time devoted to the matter before filing, Mr. Dezern not only had not gathered all medical records relevant to the case, but in fact took *nearly nine more months* to do so. In a case where reasonable basis was lacking, or there was some other reason to take counsel to task for overbilling, I would factor this into my determination of what paralegal costs should be reimbursed. However, the end result overall was favorable to the Petitioner, and the matter was generally litigated with efficiency, so my sense that some prefiling paralegal work was not as efficient as it could have been does not impact my decision to pay these costs in this case.

reports in this action. Pet'r's Ex. 6. Petitioners must substantiate the hourly rates claimed by their experts and the number of hours that the experts provided services. *See, e.g., Sabella*, 86 Fed. Cl. at 223 (finding no abuse of discretion where special master determined typical hours for expert after petitioner failed to provide adequate documentation of claimed costs); *Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997) (stating that petitioners must substantiate the hourly rates and number of hours that their experts claim).

Petitioners have not supplemented their fees application with any invoices from Dr. Steinman, however, and I therefore can only infer what rate he charged for his services. Other special masters have awarded Dr. Steinman $500 per hour for his services, and in cases where he prepared expert reports, between 14 and 17 hours for a report has been deemed reasonable. *See, e.g.*, *Pentcholov v. Sec'y of Health & Human Servs.*, No. 14-414V, 2016 WL 3197389, at *6 (Fed. Cl. Spec. Mstr. Apr. 29, 2016) (awarding Dr. Steinman $500 per hour for 29.75 hours spent on two expert reports); *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2016 WL 909186, at *11 (Fed. Cl. Spec. Mstr. Feb. 17, 2016) (determining $500 per hour for Dr. Steinman's 17 hours of work on one initial expert report was reasonable); *Brown v. Sec'y of Health & Human Servs.*, No. 09-426V, 2012 WL 952268, at *10-11 (Fed. Cl. Spec. Mstr. Feb. 29, 2012) (finding $500 per hour for 15 hours to review medical records and prepare an initial report was reasonable). I will therefore similarly reimburse him for 16 hours of work, billed at the rate of $500, for a total of $8,000.

Finally, Petitioner requests in the amount of $3,103.05, for copying, filing fees, and similar charges incurred solely by the Maglio Firm. Ex. 33 at 17-19. Respondent does not object to these costs as unreasonable, and upon review of the record I find that they are acceptable. I therefore award this sum in its entirety.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Based on the reasonableness of Petitioner's request, as well as my reductions and hourly fee rate decisions set forth above, I hereby GRANT in part Petitioner's Motion for attorney's fees and costs, as follows:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Caldwell's Fees | $36,850.40 | $4,736.40 | $32,114.00 |
| Maglio Firm Costs[12] | $3,103.05 | none | $3,103.05 |
| Dr. Steinman's Fees | $8,375.00 | $375.00 | $8,000.00 |
| Paralegal Costs | $5,654.50 | $348.00 | $5,306.50 |

Accordingly, I award a total of **$48,523.55** as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, Franklin J. Caldwell, Jr., Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[13]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[12] In accordance with General Order No. 9, Petitioner's counsel has represented that Mr. Dezern separately incurred no reimbursable costs in proceeding with this petition. Ex. 36 (ECF No. 48-4). Accordingly, costs paid herein include no separate costs payable to Mr. Dezern.

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.